736 So.2d 553 (1999)
FIRST FAMILY FINANCIAL SERVICES, INC.
v.
Bob ROGERS and Mary L. Rogers.
American Security Insurance Company and Union Security Life Insurance Company
v.
Bob Rogers and Mary L. Rogers.
Nos. 1972163, 1972171.
Supreme Court of Alabama.
March 19, 1999.
Rehearing Denied May 21, 1999.
*554 Sandy G. Robinson of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, for appellant First Family Financial Services, Inc.
James E. Robertson, Jr., and Rodney R. Cate of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for appellants American Security Insurance Company and Union Security Life Insurance Company.
Joseph C. McCorquodale III and Jacqualyn S. Bradley of McCorquodale & McCorquodale, Jackson, for appellees.
HOUSTON, Justice.
The defendants, First Family Financial Services, Inc. ("First Family"), American Security Insurance Company ("American Security"), and Union Security Life Insurance Company ("Union Security"), appeal from the trial court's order denying their motions to compel arbitration of the claims made by the plaintiffs, Bob Rogers and Mary L. Rogers, based on allegations of breach of contract, fraud, and violation of Ala.Code 1975, § 5-19-1 et seq. (the "Mini-Code"). We affirm as to American Security and Union Security. As to First Family, we reverse and remand.
The plaintiffs obtained loans from First Family on December 21, 1991, and August 23, 1994. The plaintiffs allege that in conjunction with those loans they purchased credit-property insurance from American Security and credit-life and credit-disability insurance from Union Security. They further allege that in those transactions *555 First Family acted as an agent for American Security and Union Security and that a loan officer of First Family made certain material misrepresentations to them (specifically, that the purchase of credit-property, credit-life, and credit-disability insurance was required as a condition to their obtaining the loans) and suppressed certain material information (specifically, that the amount of credit insurance required of them was excessive). The plaintiffs sued First Family, American Security, and Union Security, seeking damages based on claims arising out of the 1991 and 1994 transactions.
First Family, American Security, and Union Security moved to compel arbitration of the plaintiffs' claims, based on the following document, which was executed by the plaintiffs and First Family in conjunction with a 1997 loan transaction:
"READ THIS ARBITRATION AGREEMENT CAREFULLY, IT LIMITS CERTAIN OF
 YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.
 "ARBITRATION AGREEMENT
 "[At this point, the agreement sets out, in a box, the following items:
 "BORROWERS (Called LENDER (Called `we' or `us')
 `you' or `your')
 "First Family Financial
 "Bob Rogers and Mary Services, Inc.
 Rogers "1504 College Avenue
 "[address] "Jackson, AL 36545
 "Date of Loan "Account Number"]
 "10/27/97"
"In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement:
"ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.
"DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:
" *your loan from us today;
" *any previous loan from us and any previous retail installment sales contract or loan assigned to us;
" *all the documents relating to this or any previous loan or retail installment sales contract;
" *any insurance purchased in connection with this or any previous loan or retail installment sales contract;
" *whether the claim or dispute must be arbitrated;
"*the validity of this arbitration agreement;
" *any negotiations between you and us;

*556 " *any claim or dispute based on an allegation of fraud or misrepresentation;
" *any claim or dispute based on federal or state statute; and
" *any claim or dispute based on an alleged tort.
"This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.
"You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.
"ARBITRATION RULES: The arbitration will be conducted under the `Commercial Arbitration Rules' of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.
"STARTING ARBITRATION: Either you or we can start arbitration any time a dispute arises between you and us.
To start arbitration, you or we must do the following things:
"1. Complete a Demand For Arbitration (a copy is attached to this agreement)
"2. Send three copies of the completed Demand for Arbitration and three copies of this agreement to:
American Arbitration Association 1975 Century Boulevard, N.E., Suite 1
Atlanta, Georgia 30345
"3. Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.
"COSTS OF ARBITRATION: If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.
"SELECTION OF ARBITRATOR: The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.
"LOCATION OF ARBITRATION: The arbitration will take place in the county *557 where you live unless you and we both agree to another location.
"ENFORCEMENT OF ARBITRATION DECISION: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.
"OTHER IMPORTANT AGREEMENTS:
"1. This agreement does not affect the applicability of any statute of limitations.
"2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
"3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
"4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
"5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
"6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
"7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged in bankruptcy.
"READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.
"You and we have entered into this agreement as of the `Date of Loan' written above.
 "Borrower: Bob and Mary Rogers Lender: First Family Financial Services, Inc.
 "/s/ Bob Rogers By: [Signature of representative] 
 "Borrower
 "/s/ Mary L. Rogers 
"You acknowledge that you have received a completed copy of this agreement together with one copy of the Commercial Arbitration Rules and one Demand For Arbitration form.
 "[Bob Rogers's initials] [Mary L. Rogers's initials]" 
The plaintiffs later amended their complaint to seek a judgment declaring that the 1997 document was not an enforceable arbitration agreement. The plaintiffs submitted an affidavit in support of their request for declaratory relief; that affidavit states, in pertinent part:
"When we borrowed money from First Family Financial Services, Inc., in 1991 and 1994, no one discussed arbitration. When we took out another loan in October, 1997, no one explained to us about the arbitration agreement that was a part of that transaction, and no one explained to us that the arbitration agreement could be used to deny us our right to a trial by jury for any wrongs committed against us with regard to the 1991 and 1994 loans. We were told to sign all of these documents in order to get our loan at First Family Financial Services, Inc., in 1997, and nothing was explained to us about an arbitration agreement, a waiver of a right to trial by *558 jury, or retroactive application of any arbitration agreement to any previous loan that we had with First Family Financial Services, Inc. We never read the arbitration agreement. No one explained the arbitration agreement to us.
"We hereby state under oath of our own personal knowledge, information and belief, that we do not believe that we are financially able to pay any fees to an arbitrator or to the American Arbitration Association, which we understand can be as much as $1,000.00 to $3,000.00 per day. Had it been explained to us by anyone that by signing the arbitration agreement in 1997, we would supposedly be agreeing to pay an arbitrator a fee of $1,000.00 per day to arbitrate claims that we might have based on wrongful conduct against us that occurred in 1991 and 1994, and giving up our right to a trial by jury, we most certainly would not have agreed to any provision like that."
The trial court denied First Family's motion to compel arbitration, accepting and quoting in its order the plaintiffs' contention that they "did not understand what the document said and were misled into signing the document without understanding what it was." The trial court also refused to compel arbitration of the claims against American Security and Union Security, noting that neither was a signatory to the 1997 document and stating that nothing in that document indicated it was intended to bind anyone other than the plaintiffs and First Family.
First Family contends that the 1997 document signed by the plaintiffs is clear and that it should be enforced according to its terms. First Family argues that, by signing the document, the plaintiffs agreed to arbitrate any dispute with First Family arising out of the 1991 and 1994 transactions, including disputes relating to arbitrability. American Security and Union Security basically take the same position, arguing further, on the basis of the doctrine of equitable estoppel, that the plaintiffs' claims against them are subject to arbitration; they rely on the theory that their claims are founded on, and intertwined with, a contract that is subject to an arbitration provision.
The plaintiffs contend that they should not be compelled to arbitrate anything. They argue that the 1997 document is unconscionable because, they say, they did not understand that they were agreeing to arbitrate disputes arising out of past transactions and further because, they say, enforcement of the arbitration provision will cause them to suffer a financial hardship. The plaintiffs also argue that American Security and Union Security are not within the scope of the 1997 document.
After carefully reviewing the briefs and the record, we conclude that the trial court erred in denying First Family's motion to compel arbitration. The 1997 document is clear, and in unmistakable terms it obligates the plaintiffs to arbitrate their disputes with First Family. There is no evidence that the plaintiffs could not have understood what they were signing if they had taken the time to read the document. There is also no evidence that the plaintiffs were denied the opportunity to read the document or that they were otherwise tricked into signing it. In fact, the plaintiffs do not even argue that they were incapable of reading and understanding the document or that their signatures were fraudulently induced. The plaintiffs' basic contention (that they did not agree to arbitrate) is based on the undisputed fact that they failed to read the 1997 document. However, when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby. See Ex parte Stripling, 694 So.2d 1281, 1283 (Ala.1997) (holding that the plaintiffs were bound to arbitrate their claims against SouthTrust Securities, Inc., based on an arbitration provision contained *559 in the application for an investment account); see, also, Green Tree Agency Inc. v. White, 719 So.2d 1179 (Ala.1998) (stating that there can be no fraudulent suppression when the matter allegedly suppressed is disclosed to the plaintiff in a contract that the plaintiff could have read and understood); Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303 (Ala.1997); Robinson v. JMIC Life Ins. Co., 697 So.2d 461 (Ala.1997).
Furthermore, the plaintiffs financial-hardship argument is foreclosed by this Court's decision in Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 37-38 (Ala. 1998):
"Phelps argues that it might place a hardship upon him to force him to pay the filing fees, but, if it does, this alone should not permit this Court to substitute different meanings for the terms used by the parties. To do so would be contrary to Alabama law:
"`Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left.'
"Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982).
"We should note, as did the Arizona Court of Appeals when it answered this same question in 1971 [A.P. Brown Co. v. Superior Court, 16 Ariz.App. 38, 490 P.2d 867 (1971)], that our holding in no way precludes claimants under financial hardships from acquiring a resolution to contract disputes they have agreed to arbitrate. Phelps did not exhaust his administrative remedies as to the matter of the filing fee; he did not pursue the options provided for him under the AAA Commercial Arbitration Rules. Rule 48 specifically provides that the AAA can defer or reduce the administrative fees `in the event of extreme hardship on the part of any party.' Phelps has not yet asked the AAA to do this. It is also possible under Rule 43 for the arbitrator to apportion all fees to one party or the other. The AAA's Commercial Arbitration Rules discourage frivolous claims, and, at the same time, they take into account the needs of financially distressed claimants."
The arbitration provision here states:
"COSTS OF ARBITRATION: If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees."
This cost allocation is not unreasonable per se, and, even if the plaintiffs do incur a hardship in paying the costs of arbitration, the Commercial Arbitration Rules of the AAA provide a means for addressing and alleviating the plaintiffs' financial concerns.
With respect to the plaintiffs' claims against American Security and Union Security, we note that the 1997 document is replete with references to the parties as being "Bob Rogers," "Mary Rogers," and "First Family Financial Services, Inc." Specifically, the document states that "[i]n consideration of the mutual *560 promises made in this agreement, you [the plaintiffs] and we [First Family] agree to arbitrate ... all claims and disputes between you and us ...." The "Disputes Covered" section of the document states that "[t]his agreement applies to all claims and disputes between you [the plaintiffs] and us [First Family]"; this statement is followed by a number of examples setting out the context in which such claims or disputes may arise. The document goes on to state that "[t]his agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you [the plaintiffs] and any of our [First Family's] employees or agents, any of our affiliate corporations, and any of their employees or agents." Neither American Security nor Union Security is an agent or affiliate corporation (parent corporation, subsidiary corporation, or sister corporation) of First Family. The arbitration provision is, therefore, not broad enough to include the plaintiffs' claims against American Security and Union Security. Although this Court has recognized the applicability of the doctrine of equitable estoppel in certain cases involving a nonsignatory's motion to compel arbitration, see Ex parte Isbell, 708 So.2d 571 (Ala.1997), that doctrine is not applicable in cases such as this one, where the arbitration provision is specifically limited to the signing parties (i.e., where the provision is not broad enough to indicate an intent on the plaintiffs' part to arbitrate with a nonsignatory). See, e.g., Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998); Ex parte Isbell, supra; Ex parte Jones, 686 So.2d 1166 (Ala.1996); Ex parte Martin, 703 So.2d 883 (Ala.1996); Ex parte Stripling, supra; Ex parte Stallings & Sons, Inc., 670 So.2d 861 (Ala.1995). See, also, D. Sawrie, Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court's Retrenchment of an Expansive Federal Policy Favoring Arbitration, 51 Vand. L.Rev. 721 (1998). The trial court properly denied the motion to compel arbitration filed by American Security and Union Security.
The trial court's order is affirmed insofar as it relates to the plaintiffs' claims against American Security and Union Security; however, insofar as it relates to the plaintiffs' claims against First Family, the order is reversed and the case is remanded.
1972171AFFIRMED.
1972163REVERSED AND REMANDED.
COOK, LYONS, and BROWN, JJ., concur.
MADDOX, J., concurs specially.
SEE, J., concurs in the result.
HOOPER, C.J., concurs in part and dissents in part.
MADDOX, Justice (concurring specially).
I agree that the trial court erred in not compelling the plaintiffs to arbitrate their claims against First Family Financial Services, Inc. I also agree that, under the facts of this case, the plaintiffs should not be compelled to arbitrate their claims against Union Security Life Insurance Company and American Security Life Insurance Company. Union Security and American Security are nonsignatories to the contract that contains the arbitration provision. Although I have opined on other occasions that, under the doctrine of equitable estoppel, a nonsignatory may compel a signatory to arbitrate when the claims involved are "intimately founded in and intertwined with the underlying contract obligations," I do not believe that doctrine should be applied here. See Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995) (quoting an earlier case).
My views on when and under what circumstances the doctrine of equitable estoppel should be applied are stated in my special writings in Med Center Cars, Inc. *561 v. Smith, 727 So.2d 9 (Ala.1998) (Maddox, J., concurring in the result as to Parts I(B), II, and III; and dissenting as to Parts I(A) and I(C)); Ex parte Dickinson, 711 So.2d 984 (Ala.1998) (Maddox, J., concurring in part and dissenting in part); Ex parte Stripling, 694 So.2d 1281 (Ala.1997) (Maddox, J., concurring in part and dissenting in part); and Ex parte Jones, 686 So.2d 1166 (Ala.1996) (Maddox, J., dissenting).
HOOPER, Chief Justice (concurring in part and dissenting in part).
I agree that the trial court erred in not compelling the plaintiffs to arbitrate their claims against First Family Financial Services, Inc. However, I disagree with the main opinion's conclusion that the plaintiffs' claims against Union Security Life Insurance Company and American Security Insurance Company are not subject to the arbitration agreement. The federal courts, as well as this Court, have considered the issue of equitable estoppel in the arbitration context. See the cases cited in Justice Maddox's special writing. See also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993), cert. denied sub nom. Sunkist Growers, Inc. v. Del Monte Corp., 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994);[1]J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir.1988); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (7th Cir.1984).
Like the plaintiffs in some of these cases just cited, the Rogerses would have no claim against the nonsignatory defendants but for their contract with the defendant that did sign the arbitration agreement. That signatory was First Family, the company the Rogerses allege acted as agent for the nonsignatory defendants, Union Security and American Security. The Rogerses purchased from American Security the property-damage insurance that covered the very property they had purchased with the proceeds of a loan from First Family. They purchased from Union Security the credit-life insurance that covered the debt incurred in the purchase of that property; the purchase of the property was financed by First Family. They entered the agreements accepting those insurance coverages as part of the same transaction in which they got the loan from First Family.
The main opinion explains that the Rogerses allege that a loan officer employed by First Family made certain material misrepresentations to them regarding their purchase of the property-damage and credit-life insurance. From the materials before this Court, it is difficult to determine how the paperwork between First Family and the Rogerses was handled, but the normal means by which a debtor accepts credit-life, credit-disability, and credit-property insurance with respect to a loan is by signing or initialing an acceptance on the very same documents that the creditor uses to process the loan itself. It is difficult to conceive of transactions more intertwined than transactions such as these among the Rogerses, First Family, American Security, and Union Security. Does the Rogerses' dispute with American Security and Union Security not arise out of the very same contract with First Family in which the arbitration agreement appears?
I would also point out what I think is an important, but sometimes neglected, factor in determining whether the doctrine of equitable estoppel applies to a nonsignatory's motion to compel arbitration. What if, in this case, the arbitrator finds First Family liable, on the basis that its loan officer made material misrepresentations? *562 What if a state trial court exonerates American Security and Union Security on the claims based on the alleged misrepresentations made by the loan officer of First Family, the very same loan officer determined by the arbitrator to have made misrepresentations? Would these inconsistent results not pose a problem in regard to the public's perception of justice? Should a court not consider the potential for inconsistent results in separate forums when it is determining how intertwined the parties to a transaction are?
I dissent from holding that the Rogerses are not required to arbitrate their claims against American Security and Union Security. One reason for dissenting is my concern for the consistent administration of justice in the State of Alabama.
NOTES
[1] The Sunkist Court wrote, regarding another case: "The [United States Court of Appeals for the] Seventh Circuit noted that, although the plaintiff had characterized its claims against the construction manager as sounding in tort, i.e., intentional and negligent interference with contract, in substance the complaint was based on the manager's alleged breach of the obligations and duties assigned to it in the agreement." Sunkist, 10 F.3d at 757, citing Hughes Masonry Co. v. Greater Clark County School Building Corp., 659 F.2d 836 (7th Cir.1981).