790 So.2d 933 (2000)
Ex parte David LOVEJOY.
(Re David Lovejoy v. New South Federal Savings Bank and Vesta Fire Insurance Company).
1981758.
Supreme Court of Alabama.
July 7, 2000.
Opinion Overruling Rehearing February 16, 2001.
*934 K. Stephen Jackson and Jenifer S. Worley of K. Stephen Jackson, P.C., Birmingham, for petitioner.
Edwin O. Rogers, Joshua J. Wright, and Aaron L. Dettling of Hand Arendall, L.L.C., Birmingham, for respondent New South Federal Savings Bank.
Henry E. Simpson, Robert D. Eckinger, and Laurence J. McDuff of Lange, Simpson, Robinson & Somerville, L.L.P., Birmingham, for respondent Vesta Fire Insurance Company.
*935 JOHNSTONE, Justice.
Plaintiff David Lovejoy petitions for a writ of mandamus directing Judge G. William Noble, of the Jefferson County Circuit Court, to vacate his order of March 29, 1999, compelling Lovejoy to arbitrate his claims against Vesta Fire Insurance Company (Vesta). We grant the petition and issue the writ.
On July 31, 1996, David Lovejoy purchased an automobile from Allen Motor Company. Lovejoy and Allen Motor Company entered into a "Retail Installment Contract and Security Agreement," which required Lovejoy to purchase and to maintain insurance on the automobile. The retail installment contract contains an arbitration provision, which reads:
"ARBITRATION: Except as herein provided, and IN LIEU OF OUR RIGHTS TO A JURY TRIAL, all disputes or controversies between you and us, whether in contract or tort, shall be resolved in Birmingham, Alabama by BINDING ARBITRATION in accordance with Title 9 of the U.S.Code and the Arbitration Rules for Commercial Financial Disputes (the `Rules') of the American Arbitration Association (the `AAA'). All defenses, including those defenses based on statutes of limitations, estoppel, waiver, laches and similar doctrines, that would otherwise be applicable to an action brought by a party, shall be applicable in any such arbitration proceeding. Notwithstanding the above, we shall have the right, but not the obligation, to submit to and pursue in a court of law any claim against you for a debt due without waiving such claims or any other claims as a claim or counter-claim in arbitration. Nothing herein shall limit out right (1) to foreclose against the property by exercise of a power of sale under this contract, or by exercise of any rights of foreclosure or of sale under applicable laws, or (2) to exercise self-help remedies such as setoff or repossession. You agree that this transaction contemplates substantial interstate commerce. For claims of $50,000.00 or less, one (1) arbitrator will be selected using the Rules. For claims of more than $50,000.00, the AAA shall designate a panel of fifteen (15) neutral, potential arbitrators knowledgeable in the subject matter of the Dispute, from which three (3) mutually acceptable arbitrators will be selected by the parties, who shall determine the resolution of the Dispute. The arbitrators shall be selected applying a process of strikes, as more particularly described in the Rules. In the event the parties cannot agree on three (3) mutually acceptable arbitrator(s), then, from the list, each of us shall designate one (1) of the neutral, potential arbitrators to serve, and the two arbitrators so designated shall select a third neutral arbitrator from the thirteen (13) remaining potential arbitrators. The panel of three (3) arbitrators shall determine the resolution of the Dispute." (Emphasis added.)
The retail installment contract defines the terms "you" and "your" as "each Buyer above [Lovejoy] and guarantor, jointly and severally." The terms "we" and "us" "mean[ ] the Seller above [Allen Motor Company], its successors and assigns." On that same day, Allen Motor Company assigned, without recourse, the retail installment contract to New South Federal Savings Bank (New South Bank).
After Lovejoy allowed his insurance policy on the automobile to lapse in December 1995, New South Bank purchased from Vesta a "single interest" insurance policy insuring its interest in Lovejoy's automobile. On April 28, 1996, Lovejoy totaled his automobile. He reported the accident and total damage to his automobile to New *936 South Bank and Vesta. An employee or agent of Vesta informed Lovejoy that he must make the premium payments for the insurance. A Vesta employee or agent told Lovejoy that, if he filed an insurance claim, the claim would adversely affect his credit report. In February 1997, Lovejoy received from Vesta a $354 premium notice for the "single interest" insurance policy. Lovejoy paid the premium.
On December 30, 1999, Lovejoy sued New South Bank and Vesta for breach of contract; conversion; breach of fiduciary duty; innocent misrepresentation; intentional misrepresentation; fraudulent suppression; deceit; fraudulent deceit; continuing misrepresentations and suppressions, violations of § 6-5-100 et seq., Ala.Code 1975; and intentional infliction of emotional distress. Lovejoy alleged that New South Bank and Vesta made misrepresentations or suppressed material facts which induced him into "entering into the loan agreement."
New South Bank filed a motion to compel arbitration. Vesta joined in the motion to compel arbitration on the ground that Lovejoy's claims against it were "inextricably intertwined with the provisions of the Retail Installment Contract." Lovejoy opposed the motion to compel arbitration. Thereafter, finding that the "arbitration agreement is sufficiently broad to cover the disputes of both the signatory and non-signatory parties," Judge G. William Noble entered an order compelling Lovejoy to arbitrate his claims against New South Bank and Vesta.
On April 28, 1999, Lovejoy filed a motion to "reconsider" the March 29, 1999, ruling insofar as it compelled arbitration of his claims against Vesta. On June 8, 1999, Lovejoy amended his complaint to "clarify" his claims against Vesta. He alleged claims of innocent misrepresentation, intentional misrepresentation, fraudulent suppression, deceit, fraudulent deceit, continuing misrepresentations and suppressions, money had and received, and unjust enrichment against Vesta. The gravamen of his amended claims against Vesta was the alleged misrepresentations made by a Vesta employee or agent that Lovejoy had to pay the $354 insurance premium for the "single interest" insurance policy on the totaled automobile and that, if he filed an insurance claim, the claim would adversely affect his credit report. The gravamens of his claims against New South Bank remained misrepresentations of fact or suppressions of fact that induced him to sign the retail installment contract and to forgo borrowing the funds from a different banking institution. Shortly thereafter, the trial court entered an order stating:
"Presently pending before the court is [Lovejoy's] Motion to Reconsider the court's Order of March 29, 1999, granting [Vesta's] Motion to Compel Arbitration. The arbitration agreement was contained in a contract between [Lovejoy] and [New South Bank], which also provided that [Lovejoy] would obtain and maintain insurance on his automobile or upon [his] failure to do so, New South [Bank] could obtain such insurance. [Lovejoy] failed to maintain insurance and New South [Bank] obtained single interest coverage from ... Vesta. The automobile was wrecked and rendered a total loss. [Lovejoy's] various counts against [New South Bank and Vesta] include claims for breach of contract, conversion, breach of fiduciary duty, innocent and intentional misrepresentations and deceit. [Lovejoy] contends that the recent cases of Universal Underwriters Life Ins. Co. v. Dutton, [736 So.2d 564 (Ala.1999),] and First Family Financial Services, Inc. v. Rogers, [736 So.2d 553 (Ala.1999),] are controlling in this matter. Upon consideration *937 of [Lovejoy's] motion and a review of the pleadings and authorities in support thereof, the court finds that even though Vesta is a non-signatory to the contract, the claims against Vesta and New South [Bank] are inextricably intertwined. Due to the various claims in this case the court finds that Ex parte Napier, 723 So.2d 49 (Ala.1998), is more applicable to this case. Consequently, [Lovejoy's] Motion to Reconsider is OVERRULED."
A writ of mandamus is an extraordinary remedy which requires a showing of (a) a clear legal right in the petitioner to the order sought, (b) an imperative duty on the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court. Ex parte Bruner, 749 So.2d 437 (Ala.1999). "A petition for a writ of mandamus is the proper means by which to challenge a trial court's order granting a motion to compel arbitration." Ex parte Napier, 723 So.2d 49, 52 (Ala.1998).
`"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Pursuant to the doctrine of equitable estoppel, a plaintiff may be compelled to arbitrate his or her claims against a nonsignatory to a contract containing an arbitration provision if the claims "are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause." Ex parte Dyess, 709 So.2d 447, 451 (Ala.1997). Specifically, claims against a nonsignatory to a contract containing an arbitration provision are "founded on, and are intertwined with, the facts surrounding the underlying contract," id., (1) where the plaintiff asserts breach of duty imposed or entailed by that contract, or (2) where the plaintiff alleges conspiracy or agency between a nonsignatory and a signatory to a contract containing an arbitration clause. Ex parte Isbell, 708 So.2d 571 (Ala.1997). See also MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999). However, this Court has held:
"Although this Court has recognized the applicability of the doctrine of equitable estoppel in certain cases involving a nonsignatory's motion to compel arbitration, see Ex parte Isbell, 708 So.2d 571 (Ala. 1997), that doctrine is not applicable in cases such as this one, where the arbitration provision is specifically limited to the signing parties (i.e., where the provision is not broad enough to indicate an intent on the plaintiffs' part to arbitrate with a nonsignatory). See, e.g., Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998); Ex parte Isbell, supra; Ex parte Jones, 686 So.2d 1166 (Ala.1996); Ex parte Martin, 703 So.2d 883 (Ala. 1996); Ex parte Stripling, [694 So.2d 1281 (Ala.1997) ]; Ex parte Stallings & Sons, Inc., 670 So.2d 861 (Ala.1995)."
First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 560 (Ala.1999).
Bob Rogers and Mary L. Rogers, the plaintiffs in First Family Financial Services, signed a loan agreement which stated "`[i]n consideration of the mutual promises made in this agreement, you [the plaintiffs] and we [First Family] agree to arbitrate ... all claims and disputes between you and us ...." 736 So.2d at 559-60. The loan agreement provided further "`[t]his agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you [the plaintiffs] and any of our [First Family's] *938 employees or agents, any of our affiliate corporations, and any of their employees or agents.'" 736 So.2d at 560.
The arbitration provision in the retail installment contract signed by Lovejoy is also specifically limited to "all disputes or controversies between you [Lovejoy] and us [Allen Motor Company and its assignees]." Vesta is not an assignee of Allen Motor Company or New South Bank. Consequently, the arbitration provision in the retail installment contract signed by Lovejoy is specifically limited to the signing parties and their assignees and is not broad enough to cover Lovejoy's claims against Vesta. Moreover, Lovejoy is not suing Vesta on the retail installment contract or as either the principal or the agent of, or a conspirator with, New South Bank. Accordingly, neither the facts nor the law supports the order of the trial court in compelling arbitration of Lovejoy's claims against Vesta. Therefore, Lovejoy has shown a clear legal right to the order sought. Ex parte Bruner, supra. Thus, Lovejoy is entitled a writ of mandamus directing Judge G. William Noble to vacate his order of March 29, 1999, and to enter an order denying Vesta's motion to compel arbitration.
WRIT ISSUED WITH INSTRUCTIONS.
HOUSTON, COOK, LYONS, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., dissent.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent. I agree with the trial court's determination that Lovejoy's claims against New South Bank and Vesta are "inextricably intertwined." See my dissent in Ford Motor Co. v. Hall, 709 So.2d 1198 (Ala.1998), and the cases cited therein. "[I]t is clear that a nonsignatory may enforce an arbitration agreement if the claims against it are intertwined with the underlying contract containing the arbitration clause." 709 So.2d at 1199 (Hooper, C.J., dissenting).
Lovejoy's claim against Vesta is premised upon the original contract requiring that Lovejoy maintain insurance on the vehicle. That contract gave Allen Motor Company and its assignee, New South Bank, the right to purchase insurance for the vehicle if Lovejoy permitted his insurance to lapse. Lovejoy was not a party to the insurance contract between New South Bank and Vesta; therefore, his claims against Vesta, especially the breach-of-contract claim, must be based on the loan contract. Because Lovejoy's claims against Vesta are intertwined with the underlying contract containing the arbitration clause, the trial court properly compelled Lovejoy to arbitrate his claims against Vesta. Therefore, the petition for the writ of mandamus should be denied.
MADDOX and BROWN, JJ., concur.

On Application for Rehearing
JOHNSTONE, Justice.
Vesta raises for the first time in its application for rehearing the argument that it is a third-party beneficiary of the retail installment contract between Lovejoy and Allen Motor Company. "We can not sanction the practice of bringing up new questions for the first time, in an ex parte application for rehearing." Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604 (1893) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in application for rehearing." Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in applications *939 for rehearing." Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). "New supporting arguments presented for the first time on rehearing generally will not be considered." Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). "[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered." Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing).
APPLICATION OVERRULED.
MOORE, C.J., and LYONS, HARWOOD, and WOODALL, JJ., concur.
HOUSTON, SEE, BROWN, and STUART, JJ., dissent.
HOUSTON, Justice (dissenting).
I would grant Vesta Fire Insurance Company's application for rehearing.
On original submission, I concurred in issuing the writ of mandamus directing the trial judge to vacate his order compelling arbitration of David Lovejoy's claims against Vesta. However, I am now persuaded that Vesta, a nonsignatory to the contract containing the arbitration agreement at issue, is a third-party beneficiary of that contract. To the extent that Lovejoy seeks damages from Vesta based on claims relating to or arising out of the contract containing the arbitration provision, Vesta is entitled to have those claims arbitrated. Ex parte Stamey, 776 So.2d 85 (Ala.2000).
This Court will affirm the ruling of a trial court if that ruling is right for any reason, even a reason not presented to or considered by the trial judge. Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891, 893 (Ala.1999). Certainly, we should not issue a writ of mandamus if the trial court's order is right for any reason. See Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 872 (Ala.1999).
STUART, J., concurs.
SEE, Justice (dissenting).
I agree with the majority that Vesta's third-party-beneficiary argument is not properly before this Court, because Vesta raises that argument for the first time in its application for rehearing. See Schulte v. Smith, 708 So.2d 138, 141 (Ala.1997) (See, J., concurring in the result). Nonetheless, I dissent from the overruling of the application for the same reason that I dissented from the Court's July 7, 2000, opinion issuing the writ of mandamus. Lovejoy's claims against Vesta are inextricably intertwined with his claims against New South Bank; therefore, I believe, the trial court correctly granted Vesta's motion to compel arbitration. See MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir.1999); and Ex parte Napier, 723 So.2d 49 (Ala.1998). Accordingly, I must respectfully dissent from the overruling of the application for rehearing.