PITTMAN, Judge.
This appeal concerns the denial of a motion to compel arbitration of claims brought against an automobile manufacturer, Volkswagen Group of America, Inc. (“the manufacturer”), by the purchaser of one of the manufacturer’s motor vehicles, Bennie Williams (“the purchaser”), in the Jefferson Circuit Court. The complaint in this action averred that in February 2007 the purchaser bought a 2007 model Passat automobile from a dealer authorized by the manufacturer to sell its vehicles, Jeff Sikes, Inc. (“the dealer”). According to the purchaser, the automobile he purchased exhibited defects in its electrical system that could not be corrected by the manufacturer’s agents despite having been given a reasonable opportunity to cure them. The purchaser’s complaint asserted that he should be entitled to revoke his acceptance of the automobile under the Alabama Uniform Commercial Code (Ala. Code 1975, § 7-1-101 et seq.), that the manufacturer had breached express and implied warranties, and that he was entitled to a remedy under Alabama “lemon laws” (see generally Ala.Code 1975, § 8-20A-1 et seq.). The complaint specifically sought an award of damages “not to exceed” $50,000 (the upper monetary limit of our general civil appellate jurisdiction, see § 12-8-10, Ala. Code 1975).
After unsuccessfully moving for dismissal of the purchaser’s claims, the manufacturer filed, in April 2009, a written demand seeking to compel arbitration. In support, the manufacturer filed a one-page document labeled “Arbitration Agreement” that bore the purchaser’s signature and that provided, in pertinent part:
“In connection with the undersigned’s acquisition of the below described motor vehicle ... the undersigned and the [djealer mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of or relating to or concerning all of the contracts and agreements entered into by the parties of and concerning the [subject] motor vehicle, and business relationships resulting therefrom, as follows: That the vehicle ... was manufactured outside of Alabama or from parts traveling in interstate commerce; has operated and will continue to operate on interstate highways; has been traveling in interstate commerce; the manufacture, transportation, sale and use thereof has *1064 been and will continue to be regulated by laws of the United States of America; and, that the contract(s) and agreements entered into by the parties concerning said motor vehicle evidence transactions involving and affecting interstate commerce. The undersigned agree that all disputes ... resulting from or arising out of or relating to or concerning the transaction entered into (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the undersigned; the past, present and future condition of the motor vehicle; the conformity of the motor vehicle to any contract description; the representations, promises, undertakings, warranties or covenants made by [the d]ealer in connection with the undersigned’s acquisition of the motor vehicle, or otherwise dealing with the motor vehicle; any lease terms or the terms of credit and/or financing in connection therewith; any terms or provisions of any credit life and/or disability insurance purchased simultaneously herewith; any terms or provisions of any extended service contract purchased simultaneously herewith; and all claims or disputes as to any body and/or mechanical repairs made to the vehicle prior to, as a result of this transaction or at any time hereafter) shall be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. Section 1, et seq.”
(Capitalization in original.)
In response to the manufacturer’s “demand” seeking to compel arbitration, the purchaser filed a response asserting that the arbitration agreement was not enforceable by the manufacturer because, he said, the agreement was “party specific.” The trial court entered an order in May 2009 concluding, without setting forth its reasoning, that the manufacturer’s “demand” was “moot.” The manufacturer then filed a second “demand” for arbitration in August 2009 that, in essence, sought reconsideration of the trial court’s nonfinal order declining to compel arbitration,[1] asserting that it was entitled to enforcement of the arbitration agreement under the doctrine of equitable estoppel. The purchaser, in response, reiterated his contention that the manufacturer was not entitled to enforce the arbitration agreement between the purchaser and the dealer, and he also suggested that the manufacturer had waived its right to seek arbitration by purportedly invoking the litigation process in a substantial manner. On October 7, 2009, the trial court entered an order declining to compel arbitration, concluding that the arbitration agreement was not sufficiently broad to include the manufacturer.[2]
The manufacturer appealed on November 9, 2009. Although the trial court initially declined to compel arbitration in May 2009, we conclude that the trial court retained jurisdiction to reconsider that determination at any time before a final judgment and that the manufacturer timely sought review of the trial court’s October 2009 denial of its August 2009 motion seeking, in effect, reconsideration of the May 2009 denial; thus, our *1065 appellate jurisdiction was timely invoked. See Jim Walter Homes v. Saxton, 880 So.2d 428, 480 (Ala.2003) (appeal deemed timely when filed within 42 days of entry of trial court’s order denying motion to reconsider denial of arbitration). Our review is plenary: under Alabama law, an appellate court “reviews de novo [a] trial court’s denial of [a] motion to compel arbitration.” Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 128 (Ala.2002).
The manufacturer asserts on appeal that the trial court erred in determining that the arbitration agreement between the purchaser and the dealer could not be enforced in the manufacturer’s favor so as to compel arbitration of the purchaser’s claims. In contending that the doctrine of equitable estoppel should apply in this case to prevent the purchaser from bypassing arbitration, the manufacturer focuses primarily upon the language in the arbitration agreement that refers to “resolution of any dispute arising out of or relating to or concerning ... the contracts and agreements entered into by the parties ... and business relationships resulting therefrom” (emphasis added). The purchaser, for his part, again asserts that the arbitration agreement is “party specific” and posits that equitable estoppel cannot properly be applied to his claims against the manufacturer. The purchaser invokes the language in the arbitration agreement referring to “the undersigned and the [djealer” as the parties thereto and as having the rights to select arbitrators in the event of a dispute.
As an initial matter, our review of the arbitration agreement convinces us that the principal language relied upon by the manufacturer is not controlling. The term “business relationships” appears only in the first sentence of the arbitration agreement; however, that sentence does not contain the operative arbitration clause, but merely details the manner in which the parties have “covenanted], stipulate^] and agree[d], in connection with the resolution of any dispute,” that the purchase of the automobile at issue “involv[es] and affect[s] interstate commerce.” The arbitration clause appears in the second sentence quoted above: in it, the purchaser and the dealer “agree that all disputes ... resulting from or arising out of or relating to or concerning the transaction entered into ... shall be submitted to BINDING ARBITRATION” — a set of disputes that specifically includes those pertaining to “the past, present and future condition of the motor vehicle” as well as “all claims or disputes as to any ... mechanical repairs made to the vehicle ... at any time hereafter.”
However, we likewise cannot agree with the purchaser that the arbitration clause at issue is “party specific.” The clause, rather, speaks to “all disputes ... resulting from or arising out of or relating to or concerning the transaction," a formulation that closely parallels the broad language recognized by the Alabama Supreme Court in Smith v. Mark Dodge, Inc., 984 So.2d 375 (Ala.2006), as authorizing a nonsigna-tory to assert a right to compel arbitration through application of equitable estoppel:
“If an arbitration agreement is written in broad language so that it applies to ... ‘all disputes, claims or controversies arising from or relating to this contract or the parties thereto,’ [an appellate court] will proceed to determine whether arbitration may be compelled under the doctrine of equitable estop-pel.”
934 So.2d at 381 (citations, emphasis, and capitalization omitted).
Having determined that the doctrine of equitable estoppel may potentially apply, we must determine whether it should have been applied in this case. Al *1066 though the purchaser cites Ex Parte Stamey, 776 So.2d 85 (Ala.2000), for the proposition that, for equitable estoppel to be applied, a nonsignatory such as the manufacturer must demonstrate that the claims asserted against it are “intertwined” with claims against a signatory that must be submitted to arbitration, we agree with the manufacturer’s view, stated in its reply brief, that Stamey does not mandate, in all cases, that “intertwining” claims must exist for equitable estoppel to be applied:
“In order for a party to be equitably estopped from asserting that an arbitration agreement cannot be enforced by a nonparty, the arbitration provision itself must indicate that the party resisting arbitration has assented to the submission of claims against nonparties— claims that would otherwise fall within the scope of the arbitration provision— to arbitration. All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be ‘intimately founded in and intertwined with’ the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it. In other words, the language of the arbitration agreement must be so broad that the nonparty could assert that in reliance on that language he believed he had the right to have the claims against him submitted to arbitration, and, therefore, that he saw no need to enter into a second arbitration agreement.”
776 So.2d at 89 (emphasis added; citations omitted); accord Kenworth of Mobile, Inc. v. Dolphin Line, Inc., 988 So.2d 534, 541 (Ala.2008). The first of the two elements stated by the Alabama Supreme Court as being sufficient for the application of the doctrine of equitable estoppel is, therefore, stated in the disjunctive: a party seeking to invoke the doctrine must prove either the “intertwining” or the breadth-of-scope variant of the first element along with the breadth-of-parties second element.
In this appeal, the manufacturer has expressly disclaimed any reliance upon the “intertwining” variant, and correctly so. There is no pending action against the other signatory, the dealer, that would authorize invocation of the “intertwining” variant of the first element identified in Stamey. See Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540, 545 (Ala.2000) (pithily noting that “ ‘intertwining requires at least two threads to weave together”).
However, the purchaser in this case assented to a broad agreement mandating arbitration of “all disputes” that result from, or arise out of, or relate to, or concern, “the transaction entered into,” such as, for example, disputes as to mechanical repairs before or after the sale of the automobile at issue. The claims of the purchaser that the automobile is a “lemon” that could not be repaired, that the manufacturer breached express or implied warranties that inured to his benefit as a result of the purchase, and that he is entitled to nullify his acceptance of the fruits of the purchase transaction all touch and concern the transaction or the sufficiency of repair attempts made by alleged agents of the manufacturer; thus, the dispute falls within the breadth of the arbitration clause at issue so as to satisfy the breadth-of-scope variant of the first element set forth in Stamey. As to the second element, we have already noted that the arbi *1067 tration clause is not “party specific”[3]— rather, it speaks in terms of “all disputes” stemming from the transaction without referring to whose particular disputes are included. Thus, we conclude that the second element identified in Stamey is also present.
The trial court determined that the arbitration agreement between the purchaser and the dealer “was not sufficiently broad to include” the manufacturer. After a review of the claims of the purchaser and the arbitration agreement to which the purchaser assented in connection with the purchase of the manufacturer’s automobile, we must conclude that that determination was erroneous and that, under Alabama law, the purchaser is equitably estopped from denying the arbitrability of his claims against the manufacturer. The order of the trial court is, therefore, reversed, and the cause is remanded for the entry of an order referring the case to arbitration.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. Rule 54(b), Ala. R. Civ. P., provides that any order that does not finally adjudicate all claims against all parties in an action is subject to revision at any time before final judgment.

. The trial court did not comment on the validity of the purchaser's waiver argument, and he has not reasserted that argument on appeal.

. Although the purchaser cites McGrue, 826 So.2d at 131, and Ex parte Lovejoy, 790 So.2d 933, 938 (Ala.2000), as controlling, both of those cases involved arbitration agreements that specifically limited their scope and applicability to disputes between signatories; in contrast, the specific provision at issue in this case, which reaches "all claims or disputes as to any body and/or mechanical repairs made to the vehicle prior to, as a result of this transaction or at any time hereafter,” is " ‘broad enough to indicate an intent on the plaintiff[’s] part to arbitrate with a nonsignatory.’ ” 790 So.2d at 937 (quoting First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 560 (Ala. 1999)).