MURDOCK, Justice.
*72 Before us are appeals from denials of motions to compel arbitration filed by Locklear Chrysler Jeep Dodge, LLC ("Locklear CJD"), and Locklear Automotive Group, Inc. ("Locklear Group"), in actions filed by plaintiffs who alleged that they were victims of identity theft resulting from personal information they had provided Locklear CJD in order to explore the possibility of financing the purchase of a vehicle from Locklear CJD. In case no. 1160435, we affirm the order of the trial court denying the motion to compel arbitration; in the other appeals, we reverse the trial court's orders and remand the causes.
I. Facts
All the plaintiffs in these cases purchased vehicles from Locklear CJD. All the plaintiffs signed an arbitration agreement as part of their vehicle purchases; the operative language of those arbitration agreements is the same. And all the plaintiffs alleged that they were the victims of identity theft that resulted from providing personal information to Locklear CJD when they filled out credit applications for the vehicle purchases.
In addition to naming Locklear CJD as a defendant, the plaintiffs' complaints named multiple other defendants who they alleged played a part in the identity thefts. Among the other defendants named is Locklear Group. According to an affidavit from Christopher S. Locklear, Sr., vice president of Locklear CJD, Locklear Group "is the sole member of Locklear Chrysler Jeep Dodge, LLC."
The arbitration agreement signed by each plaintiff is titled "Binding Pre-Dispute Arbitration Agreement" ("the arbitration agreement"), and its operative language is as follows:
"In connection with the undersigned's acquisition or attempted acquisition of the below described vehicle, by lease, rental, purchase or otherwise, the undersigned and the dealer whose name appears below, stipulate and agree, in connection with the resolution of any dispute arising out of, or relating to, resulting from or concerning any contracts or agreements, or agreements or contracts to be entered into by the parties, all alleged representations, promises and covenants, issues concerning compliance with any state or federal law or regulation, and all relationships resulting therefrom, as follows: That the vehicle, services, and products (hereinafter 'products') involved in the acquisition or attempted acquisition are regulated by the laws of the United States of America; and/or, that the contract(s) and agreements entered into by the parties concerning said products evidence transactions and business enterprises substantially involving and affecting interstate commerce sufficiently to invoke the application of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and *73 any term of any agreement contemporaneously entered into by the parties; the past, present and future condition of any products at issue; the conformity of the products to any contract description; the representations, promises, undertakings, warranties or covenants made by the dealer, its agents, servants, employees, successors and assigns, or otherwise dealing with the products; any lease, sale or rental terms or the terms of credit and/or financing in connection therewith; or compliance with any state or federal laws; any terms or provisions of any insurance sought to be purchased or purchased simultaneously herewith; any terms or provisions of any extended service contract sought to be purchased or purchased simultaneously herewith) shall be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. § 1, etseq. and according to the Commercial Dispute Resolution procedures and/or consumer protocol (depending on the amount in controversy) of the American Arbitration Association (the AAA) then existing in the county where the transaction was entered into or sought to be entered into, except as follows: (a) In all disputes in which the matter in controversy (including compensatory and punitive damages, fees and costs) is more than $10,000 but less than $75,000.00, one arbitrator shall be selected in accordance with the AAA's Consumer Protocol. In all disputes in which the matter in controversy (including compensatory and punitive damages and fees and costs) is $75,000.00 or more, the parties to this agreement shall select an arbitrator under the AAA's Commercial Rules and shall select one arbitrator from a list of at least 5 suitable arbitrators supplied by the AAA in accordance with and utilizing the AAA strike method. (b) An arbitrator so selected shall be empowered to enter an award of such damages, fees and costs, and grant such other relief, as is allowed by law. The arbitrator has no authority or jurisdiction to enter any award that is not in conformance with controlling law. Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this agreement may, in addition to any other relief awarded, be taxed by the arbitrator with the costs, including reasonable attorney's fees, of any other party who had to resort to judicial or other relief in compelling arbitration. In the event the dealer and the undersigned customer(s) have entered into more than one arbitration agreement concerning any of the matters identified herein, the undersigned customers and the dealer agree that the terms of this arbitration agreement shall control disputes between and among them. Any provision in this Agreement found to be in conflict with any procedure promulgated by the AAA which shall affect its administration of disputes hereunder, shall be considered severed herefrom. With respect to the process of arbitration under the AAA Commercial Rules or Consumer Protocol, the undersigned customer(s) and the dealer expressly recognize that the rules and protocol and the terms of this agreement adequately protect their abilities to fully and reasonably pursue their respective statutory and other legal rights. If for any reason the AAA fails or refuses to administer the arbitration of any dispute brought by any party to this agreement, the parties agree that all disputes will then be submitted to binding arbitration before the Better Business Bureau (the BBB) serving the community where the Dealer conducts business, under the BBB binding arbitration ruleS.... This agreement shall survive any termination, cancellation, fulfillment, including, but not limited to cancellation due to lack of *74 acceptable financing or funding of any retail installment contract or lease. Further information about arbitration can be obtained directly from the AAA or from a review of AAA's Commercial Dispute Resolution Procedures and Consumer Protocol, and/or the BBB's Binding Arbitration Rules, copies of which are available without charge for review from the AAA and the BBB. THE UNDERSIGNED HAVE AGREED TO WAIVE THE UNDERSIGNED(S)' RIGHT TO A TRIAL BY JUDGE OR JURY IN ALL DISPUTES OVER $10,000.00 AND THAT ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT AND IN LIEU OF ANY TRIAL BY JUDGE OR JURY FOR ALL CLAIMS OVER $10,000.00. THE TERMS OF THIS AGREEMENT AFFECT LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY PROVISION OF THIS AGREEMENT OR THE COSTS, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR REVIEW THE WRITTEN CONSUMER AND/OR COMMERCIAL DISPUTE RESOLUTION PROCEDURES AND PROTOCOLS AND/OR CONTACT THE AAA OR BBB BEFORE SIGNING. BY SIGNING YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH AND REFERENCED HEREIN ABOVE.
"DESCRIPTION OF PRODUCTS/SERVICES: _______________"
(Capitalization in original; emphasis omitted; and emphasis added.)
In the blank line following the "DESCRIPTION OF PRODUCTS/SERVICES" typically was printed the year and model of the vehicle to be purchased, as well as the vehicle-identification number ("VIN") of that vehicle. Below that were blank lines for the date to be filled in and lines for signatures of the customer and a dealer representative. In two of the cases before us-the complaints filed by Jeffery Lollar and Betsy Lollar and by Anthony Hood-there are allegations that the arbitration agreements were altered after the Lollars and Hood signed their agreements, allegations that will be explained in more detail when we discuss the facts of each case.
A. Case no. 1160435: Jeffery Lollar and Betsy Lollar
Jeffery Lollar and Betsy Lollar originally visited Locklear CJD on May 28, 2013, and purchased a 2009 Dodge Ram truck. In the course of doing so, they signed the arbitration agreement. The Lollars again visited Locklear CJD in December 2015 because they were considering purchasing another vehicle. In the course of exploring that option, they filled out a credit application to see if they would qualify for a loan. The Lollars ultimately decided to purchase a vehicle from another dealership and, thus, did not sign an arbitration agreement in connection with their 2015 visit to Locklear CJD.
Sometime after their 2015 visit to Locklear CJD, the Lollars were informed by the Northport Police Department that they had been the victims of identity theft. The Lollars allege that Locklear CJD and Locklear Group, by and through their employees, had represented to them when they provided their personal information that their information would be kept confidential. Instead, according to the Lollars, Locklear CJD and Locklear Group wrongfully procured, disclosed, disseminated, *75 used, provided, and/or sold the Lollars' personal information.
The Lollars filed a complaint in the Bibb Circuit Court on October 7, 2016, against Locklear CJD, Locklear Group, and other defendants.[1] They asserted the following claims against Locklear CJD and Locklear Group: (1) negligence; (2) wantonness; (3) invasion of privacy; (4) conversion; (5) fraud-deceit, suppression, and misrepresentation; (6) tort of outrage; (7) civil conspiracy; (8) violation of Alabama's Consumer Identity Protection Act; (9) "respondeat superior"; and (10) breach of fiduciary duty.
On October 28, 2016, Locklear CJD and Locklear Group filed a joint motion to compel arbitration of all the Lollars' claims against them. In support of the motion, they submitted an affidavit from Christopher S. Locklear, Sr., who stated that he was the custodian of records at Locklear CJD and that a copy of the arbitration agreement signed by the Lollars in 2013 was attached to his affidavit. The copy of the arbitration agreement submitted with the motion to compel arbitration contained the signatures of Jeffery Lollar and Betsy Lollar, a signature of a dealer representative, the date of the 2013 transaction, and in the space for "Description of Products/Services" was printed "2009 RAM 1500" with an accompanying VIN, followed by "LOCKLEAR CHRYSLER JEEP DODGE, LLC." Locklear CJD and Locklear Group filed an amended motion to compel on February 1, 2017.
On February 8, 2017, without the benefit of a response from the Lollars or a hearing, the trial court entered an order denying the motion to compel arbitration. The order did not state a rationale for the decision. Locklear CJD and Locklear Group filed a timely appeal of the trial court's order denying their motion to compel arbitration.
B. Case no. 1160375: Anthony Hood
In November 2015, Anthony Hood visited Locklear CJD to look at vehicles. On December 19, 2015, Hood purchased a 2016 Dodge Ram 3500 truck[2] from Locklear CJD, and, in the course of doing so, he signed the arbitration agreement. At that time, Hood also completed a credit application and provided Locklear CJD with personal information. Like the Lollars, Hood alleged that Locklear CJD represented to him that his information would be kept confidential. In March 2016, Hood was informed by the Northport Police Department that he was the victim of identity theft.
On December 5, 2016, Hood filed his complaint in the Bibb Circuit Court against Locklear CJD, Locklear Group, and other defendants.[3] He asserted the following claims against Locklear CJD and Locklear Group: (1) negligence; (2) wantonness; (3) invasion of privacy; (4) conversion; (5) fraud-deceit, suppression, and misrepresentation; (6) tort of outrage; (7) civil conspiracy; (8) violation of Alabama's Consumer Identity Protection Act; (9) "respondeat superior"; and (10) breach of fiduciary duty. In his complaint, Hood recounted *76 that he "purchase[d] a 2016 3500 Dodge Ram" truck from Locklear CJD and that, in the course of doing so, he "completed a credit or financial application" provided by "Locklear Dodge personnel." Hood filed a first amended complaint on December 12, 2016, to correct his legal name in the party references.
Locklear CJD and Locklear Group filed a joint motion to compel arbitration on December 12, 2016. In support of the motion, they submitted an affidavit from Christopher S. Locklear, Sr., who stated that he was the custodian of records at Locklear CJD and that a copy of the arbitration agreement signed by Hood was attached to his affidavit. The copy of the arbitration agreement submitted with the motion to compel arbitration contained Hood's signature on a line designated "CUSTOMER," a signature of a dealer representative on a line designated "DEALER," and the date of the transaction. In the space for "Description of Products/Services" was printed "2015 RAM 3500" and a VIN. Immediately above the "DEALER" signature line was typed or printed "LOCKLEAR CHRYSLER JEEP DODGE, LLC."
On January 18, 2017, Hood filed a response in opposition to the motion to compel arbitration. Hood's response again stated that, "[a]round November 2015, [Hood] purchased a 3500 Dodge Ram at Locklear Chrysler Jeep Dodge, LLC," and that he "signed a Pre-Dispute Arbitration Agreement pertaining to the vehicle." In support of his response, Hood filed his own affidavit in which he testified:
"3. I did not sign the Arbitration Agreement attached to Locklear Defendants' Motion to Stay.
"4. The words 'Locklear Chrysler Jeep Dodge, LLC' at the bottom of the agreement are different typeset than the rest of the agreement and not part of an original document.
"5. A copy of the only agreement presented and given to me is attached to this Affidavit. Someone altered the original to add the words 'Locklear Chrysler Jeep Dodge, LLC' after the fact and filed the altered agreement in Court with the Locklear Defendants' Motion."
The version of the arbitration agreement Hood attached to his affidavit is a "blank form" of the agreement in that it contains no signatures, no date, and no description of the purchased vehicle. At the bottom, however, it does contain signature lines designated for the "DEALER" and for the "CUSTOMER." It comports with the foregoing averments in that it does not bear the typed or printed words "LOCKLEAR CHRYSLER JEEP DODGE, LLC."
On the other hand, a version of the arbitration agreement Hood attached as an exhibit to his appellate brief and represented by Hood in his brief to be a copy of the actual agreement is signed. It bears Hood's signature as "CUSTOMER," the signature of a representative of the "DEALER," the date of the transaction, and the make, model, and VIN of the subject vehicle. This version likewise comports with the averments above, i.e, it does not contain the typed or printed words "LOCKLEAR CHRYSLER JEEP DODGE, LLC."
On January 23, 2017, the trial court heard oral arguments on the motion to compel arbitration and, on the same date, entered an order denying the motion. The order did not state a rationale for the decision, except to note that the "[f]indings [are] made orally in the record." The order was issued by the same circuit judge who entered the order in the Lollars' case. In the hearing on the motion to compel arbitration, the trial court explained its decision as follows:
*77 "THE COURT: Okay. Well, I got it. Well, what I'm kind of stuck on is the nexus of the actions to the thing. And, of course, even listening to all that, it seems like to me, the nexus is not there for-because this is a-looks like a totally separate and independent matter. And, of course, the question does, though, become and it's going to be another question and, maybe, to deal with on a motion-on a summary judgment issue later on is whether or not the dealership should be held responsible for somebody else's independent criminal actions, that's a whole other issue. But I'm going to deny the motion for arbitration because seems like that's a totally separate issue. It really is in my opinion. And so-and, of course, if my bosses see otherwise. I'll go along with whatever they say. But I really think that it's a separate issue. Of course-but the meat gets down to whether or not the dealership is going to be liable. I have to see whether there's enough evidence to connect that to it. Now I don't know. But that's something right now. But let's look at this-I'm going to deny the motion to arbitrate."
Locklear CJD and Locklear Group filed a timely appeal of the trial court's order from the denial of their motion to compel arbitration.
C. Case no. 1160335: Brad Hubbard
On November 18, 2015, Brad Hubbard visited Locklear CJD and purchased a 2015 Jeep Grand Cherokee sport-utility vehicle. In the course of doing so, he signed the arbitration agreement. At that time, Hubbard also completed a credit application and provided Locklear CJD with personal information. In early 2016, Hubbard discovered that he was the victim of identity theft.
On July 1, 2016, Hubbard filed a complaint in the Tuscaloosa Circuit Court against Locklear CJD. Locklear CJD filed a motion to compel arbitration on August 9, 2016. On August 11, 2016, the trial court entered an order granting Locklear CJD's motion. The following day Hubbard filed a motion to set aside the order, but on August 29, 2016, he withdrew his motion.
On August 22, 2016, Hubbard filed his first amended complaint in which he added additional defendants, namely Allen Bentley, Wireless Advantage Communications, Inc., Verizon Communications, Inc., and Verizon Credit, Inc., as well as asserted additional claims. On October 12, 2016, Hubbard filed a second amended complaint in which he added Locklear Group as a defendant and asserted additional claims against the defendants. The second amended complaint asserted the following claims against all the named defendants, including Locklear CJD and Locklear Group: (1) negligence; (2) wantonness; (3) violation of Alabama's Consumer Identity Protection Act; (4) conversion; (5) invasion of privacy; (6) tort of outrage; (7) civil conspiracy; and (8) negligent and/or wanton hiring, retention, supervision, and/or training.
Locklear Group filed a motion to compel arbitration on October 13, 2016. On October 18, 2016, the trial court set the motion for a hearing date of October 28, 2016. On October 27, 2016, Hubbard filed a response in opposition to the motion to compel arbitration. In his response, Hubbard contended that Locklear Group could not enforce the arbitration agreement because it was not a signatory to the agreement and the language of the agreement was limited to the signing parties-Locklear CJD and Hubbard. Hubbard did not oppose arbitration of his claims against Locklear CJD.
On December 27, 2016, the trial court entered an order denying Locklear *78 Group's motion to compel arbitration. In its order, the trial court quoted a portion of the arbitration agreement and then stated:
"This arbitration provision is broad in the sense that it applies to 'any dispute' arising from or related to 'any contracts or agreements.' However, it is narrow in the sense that it applies only to 'the undersigned and the dealer' or to contracts entered into 'by the parties.' The provision does not define 'dealer' or 'parties' in such a way that would include Locklear [Group]. See MTA, Inc. v. Merrill, Lynch, Pierce, Fenner, 114 So.3d 27 (Ala. 2012).
"Accordingly, Locklear ... Group's Motion to Stay and Compel Arbitration is due to be and hereby is DENIED."
(Capitalization in original.)
Locklear Group filed a timely notice of appeal from the trial court's order denying its motion to compel arbitration.[4]
D. Case no. 1160336: Jeremy Averette
On October 29, 2015, Jeremy Averette visited Locklear CJD and purchased a 2016 Dodge Ram truck. In the course of doing so, he signed the arbitration agreement. At that time, Averette also completed a credit application and provided Locklear CJD with personal information. On February 18, 2016, Averette was notified by the Northport Police Department that he was the victim of identity theft.
On June 27, 2016, Averette filed a complaint in the Tuscaloosa Circuit Court against Locklear CJD. Locklear CJD filed a motion to compel arbitration on August 9, 2016. On August 29, 2016, the trial court entered an order granting Locklear CJD's motion to compel arbitration.
On August 22, 2016, Averette filed his first amended complaint in which he added additional defendants, namely Allen Bentley, Wireless Advantage Communications, Inc., Verizon Communications, Inc., and Verizon Credit, Inc., as well as asserted additional claims. On October 12, 2016, Averette filed a second amended complaint in which he added Locklear Group as a defendant and asserted additional claims against the named defendants. The second amended complaint asserted the following claims against all the named defendants, including Locklear CJD and Locklear Group: (1) negligence; (2) wantonness; (3) violation of Alabama's Consumer Identity Protection Act; (4) conversion; (5) invasion of privacy; (6) tort of outrage; (7) civil conspiracy; and (8) negligent and/or wanton hiring, retention, supervision, and/or training.
Locklear Group filed a motion to compel arbitration on October 13, 2016. On October 17, 2016, the trial court set the motion for a hearing date of October 19, 2016. On October 18, 2016, Averette filed a response in opposition to the motion to compel. In his response, Averette, like Hubbard, contended that Locklear Group could not enforce the arbitration agreement because it was not a signatory to the agreement and the language of the agreement was limited to the signing parties-Locklear CJD and Averette. Averette did not oppose arbitration of his claims against Locklear CJD.
On December 27, 2016, the trial court entered an order denying Locklear Group's motion to compel arbitration. The substantive language of the order, except for the name of the plaintiff, was exactly the same as the order in Hubbard's case, and it was issued by the same circuit judge.
*79 Locklear Group filed a timely notice of appeal from the trial court's order denying its motion to compel arbitration.
E. Case no. 1160337: Carol Fuller
On November 21, 2015, Carol Fuller visited Locklear CJD and purchased a 2008 Toyota Avalon automobile. In the course of doing so, she signed the arbitration agreement. At that time, Fuller also completed a credit application and provided Locklear CJD with personal information. In February 2016, Fuller was notified by the Northport Police Department that she was the victim of identity theft.
On October 7, 2016, Fuller filed a complaint in the Tuscaloosa Circuit Court against Locklear CJD, Locklear Group, and other defendants, asserting the following claims: (1) negligence; (2) wantonness; (3) violation of Alabama's Consumer Identity Protection Act; (4) conversion; (5) invasion of privacy; (6) tort of outrage; (7) civil conspiracy; and (8) negligent and/or wanton hiring, retention, supervision, and/or training.
On October 11, 2016, Locklear CJD and Locklear Group filed a joint motion to compel arbitration. On October 26, 2016, the trial court set the motion for a hearing date of October 28, 2016. On October 27, 2016, Fuller filed a response in opposition to the motion to compel. In her response, Fuller-as did Averette and Hubbard-contended that Locklear Group could not enforce the arbitration agreement because it was not a signatory to the agreement and the language of the agreement was limited to the signing parties-Locklear CJD and Fuller. Fuller did not oppose arbitration of her claims against Locklear CJD.
On December 27, 2016, the trial court entered an order granting the motion to compel as to Locklear CJD but denying it as to Locklear Group. Except for the name of the plaintiff and references to Locklear CJD's motion to compel, the order was substantively the same as the orders entered in Hubbard's and Averette's cases, and it was issued by the same circuit judge.
Locklear Group filed a timely notice of appeal from the trial court's order denying the motion to compel arbitration as to it.
F. Case no. 1160436: Elizabeth Booth
On December 7, 2015, Elizabeth Booth visited Locklear CJD and purchased a 2015 Jeep Grand Cherokee sport-utility vehicle. In the course of doing so, she signed the arbitration agreement. At that time, Booth also completed a credit application and provided Locklear CJD with personal information. In January 2016, Booth was notified by the Northport Police Department that she was the victim of identity theft.
On October 7, 2016, Booth filed a complaint in the Bibb Circuit Court against Locklear CJD, Locklear Group, and other defendants, asserting the following claims: (1) negligence; (2) wantonness; (3) violation of Alabama's Consumer Identity Protection Act; (4) conversion; (5) invasion of privacy; (6) tort of outrage; (7) civil conspiracy; and (8) negligent and/or wanton hiring, retention, supervision, and/or training.
Locklear Group and Locklear CJD filed their joint motion to compel arbitration on October 11, 2016. On November 9, 2016, Booth filed a response in opposition to the motion to compel. In her response, Booth-as did Fuller, Averette, and Hubbard-contended that Locklear Group could not enforce the arbitration agreement because it was not a signatory to the agreement and the language of the agreement was limited to the signing parties-Locklear CJD and Booth. Booth did not *80 oppose arbitration of her claims against Locklear CJD.
On January 31, 2017, the trial court held a hearing on the motion to compel arbitration. On February 1, 2017, the trial court denied the motion to compel as to Locklear Group, but it granted the motion as to Locklear CJD. Except for the name of the plaintiff, the order was substantively the same as the order entered in Fuller's case, but it was issued by a different circuit judge.
Locklear Group filed a timely notice of appeal from the trial court's order denying the motion to compel arbitration as to it.
G. Case no. 1160437: Dorothea Williams
On January 13, 2016, Dorothea Williams purchased a 2016 Chrysler 200 automobile from Locklear CJD. In the course of doing so, she signed the arbitration agreement. At that time, Williams also completed a credit application and provided Locklear CJD with personal information. In February 2016, Williams was notified by the Northport Police Department that she had been the victim of identity theft.
On October 6, 2016, Williams filed her complaint in the Bibb Circuit Court against Locklear CJD, Locklear Group, and other defendants, asserting the following claims: (1) negligence; (2) wantonness; (3) violation of Alabama's Consumer Identity Protection Act; (4) conversion; (5) invasion of privacy; (6) tort of outrage; (7) civil conspiracy; and (8) negligent and/or wanton hiring, retention, supervision, and/or training.
Locklear Group and Locklear CJD filed their joint motion to compel arbitration on October 11, 2016. On November 9, 2016, Williams filed a response in opposition to the motion to compel. On January 23, 2017, Williams filed a supplemental response to the motion. In her response, Williams-as did Hubbard, Averette, Fuller, and Booth-contended that Locklear Group could not enforce the arbitration agreement because it was not a signatory to the agreement and the language of the agreement was limited to the signing parties-Locklear CJD and Williams. Williams did not oppose arbitration of her claims against Locklear CJD.
On January 31, 2017, the trial court held a hearing on the motion. On February 1, 2017, the trial court granted the motion to compel as to Locklear CJD but denied it as to Locklear Group. Except for the name of the plaintiff, the order was substantively the same as the orders entered in the Fuller and Booth cases. It was issued by the same circuit judge who decided Booth's case. Locklear Group filed a timely notice of appeal from the trial court's order denying the motion to compel arbitration as to it.
II. Standard of Review
"Our standard of review of a ruling denying a motion to compel arbitration is well settled:
" ' "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id.'[A]fter a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'
*81 Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing)." '
" Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) )."
SSC Montgomery Cedar Crest Operating Co. v. Bolding, 130 So.3d 1194, 1196 (Ala. 2013).
III. Analysis
A. Case no. 1160335: Brad Hubbard; case no. 1160336: Jeremy Averette; case no. 1160337: Carol Fuller; case no. 1160436: Elizabeth Booth; and case no. 1160437: Dorothea Williams
The arguments by the parties in the Hubbard, Averette, Fuller, Booth, and Williams cases are identical,[5] and so we will address them together. As we observed in the rendition of the facts, the trial courts in those cases determined that the arbitration agreement "is broad in the sense that it applies to 'any dispute' arising from or related to 'any contracts or agreements.' However, it is narrow in the sense that it applies only to 'the undersigned and the dealer' or to contracts entered into 'by the parties.' " It was on this premise that the trial courts concluded that the plaintiffs' claims against Locklear CJD must be arbitrated but that their claims against Locklear Group were not subject to arbitration because Locklear Group was not a signatory to the arbitration agreement. None of the plaintiffs in this group of appeals objected to arbitration of their claims against Locklear CJD.
1. Who Decides the Arbitrability of the Claims Against Locklear Group?
We have stated that "[t]he question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability (or, under the Supreme Court's terminology, simply 'arbitrability')." Anderton v. Practice-Monroeville, P.C., 164 So.3d 1094, 1101 (Ala. 2014). "A court decides issues of substantive arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.' " Id. (quoting AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ).
On appeal, Locklear Group contends that clear and unmistakable evidence that the parties intended to arbitrate issues of arbitrability exists in the arbitration agreement. Specifically, it cites the following language in the arbitration agreement:
"The undersigned agree that all disputes ... resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: ... the terms of this agreement and all clauses herein contained, their breadth and scope, ... shall be submitted to BINDING ARBITRATION ...."
(Capitalization in original; emphasis added.)
In support of this contention, Locklear Group observes that in Jim Burke Automotive, Inc. v. McGrue, 826 So.2d 122 (Ala. 2002), this Court evaluated an arbitration agreement that contained identical language as to arbitrability. Specifically, "[t]he single-page arbitration agreement provide[d] that the arbitrator decides 'the terms of this agreement and all clauses herein contained, their breadth and scope.' " 826 So.2d at 132. The McGrue Court concluded that "[t]he language of *82 the arbitration agreement is clear and unmistakable evidence indicating that McGrue and Jim Burke intended to arbitrate the question of arbitrability." Id.
Likewise, in Ex parte Waites, 736 So.2d 550 (Ala. 1999), the Court examined an arbitration agreement that contained the same language on arbitrability:
"The arbitration provision included in the contract entered into by the parties states that the parties agree to arbitrate any disputes 'resulting from or arising out of the sale transaction entered into (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope....' "
736 So.2d at 552. The Waites Court concluded that "[t]his language expresses a clear intent to submit to arbitration the issue of arbitrability." Id. See also Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1054-55 (Ala. 2007) (concluding that an arbitration agreement that provided that the parties agreed to arbitrate " 'all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, [and] the validity and scope of this Arbitration Provision' " "demonstrates that the parties intended to arbitrate whether the agreement applies to 'any disputes that arose from their relationship' ").
For their part, the plaintiffs in these five appeals do not directly challenge the Locklear Group's position that language in the arbitration agreement sufficiently expresses an intention to arbitrate issues of arbitrability. Instead, they argue that Locklear Group did not sufficiently assert this position in the trial courts and that, therefore, it cannot serve as a basis for reversing the trial courts' orders. The plaintiffs observe that all of Locklear Group's motions to compel arbitration (which are substantially identical in all the cases before us)
"consisted of six pages and fourteen numbered paragraphs. The motions contained only one sentence on the topic of who should decide disputes concerning the scope of the arbitration agreements. Specifically, the last sentence of paragraph 10 of the motions states[:] 'Additionally, the scope and breadth of this arbitration agreement is, by its terms, to be determined by the arbitrator.' This sentence was not followed by a citation to any legal authority."
The plaintiffs in these five appeals note that "[t]his Court has long held that it 'will not hold a trial court to be in error unless that court has been apprised of its alleged error and has been given the opportunity to act thereon.' " Moultrie v. Wall, 172 So.3d 828, 840 (Ala. 2015) (quoting Sea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) ). They argue that the solitary sentence in the motions to compel was not sufficient to apprise the trial courts that arbitrability issues-including Locklear Group's ability, as a nonsignatory, to enforce the arbitration agreement-had to be decided by the arbitrator. The plaintiffs contend that the sentence is a quintessential example of an "undelineated general proposition[ ] not supported by sufficient authority or argument." White Sands Grp., LLC v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008). The plaintiffs cite multiple cases in which this Court concluded that a solitary reference to an argument in a motion before the trial court was not sufficient to raise the issue sought to be raised on appeal. See, e.g., Knight v. Alabama Power Co., 580 So.2d 576, 578 (Ala. 1991) (noting that "except for the one sentence requesting the trial court to adopt the doctrine of comparative negligence, Knight presented nothing in the way of argument on that issue.... This issue was not sufficiently argued to the *83 trial court ...."); TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1243 (Ala. 1999), overruled on other grounds by Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala. 2008) (holding that an unsuccessful bidder for a public contract could not argue on appeal that the invitation to bid was ambiguous because it "did not raise this argument in the trial court" where "[t]he only mention of ambiguity TFT made at trial came in one sentence of TFT's trial brief"); and Birmingham Hockey Club, Inc. v. National Council on Compensation Ins., Inc., 827 So.2d 73, 81 (Ala. 2002) (observing that the plaintiff's only argument regarding the applicability of a six-year statute of limitations was one sentence in a three-page motion and concluding that "[i]t can hardly be said that [the plaintiff] has presented this argument to the trial court and opposing parties so as to give them an opportunity to address this issue").
In the Booth and Williams appeals, Locklear Group responds that, in addition to the sentence in its motion to compel arbitration, it also raised the issue of arbitrability in the hearings on those motions.[6] Booth and Williams have filed motions to strike Locklear Group's references and arguments to statements it might have made in the hearings in the Booth and Williams cases, observing that no transcript of those hearings was made and so there is no evidence in the record concerning what was argued in those hearings. Booth and Williams further observe that Locklear Group could have submitted a statement under Rule 10(d), Ala. R. App. P., recounting its recollection of what was argued in the hearings if it had wanted those statements to be included as evidence before this Court, but it failed to do so.[7] Finally, Booth and Williams cite multiple cases in which this Court has refused to allow a party unilaterally to alter or supplement the record through statements in an appellate brief. See, e.g., Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So.3d 124, 134 (Ala. 2011) (noting that "because the hearing in this case was not transcribed, nothing presented at that hearing may form the basis for reversing the trial court's denial of Parker's motion to compel arbitration"); Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala. 1984) (observing that the appellant "states that estoppel was raised in oral argument at the hearing on the motion for summary judgment. However, no transcription of that hearing is included in the record. This court is limited to a review of the record alone and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel.").
In its responses to the motions to strike, Locklear Group admits that "there is no record of the oral argument," that "no steps were taken to create a statement of what occurred at the hearing[s]," and that Booth and Williams "correctly present[ ] the case law on this issue." Accordingly, we grant the motions to strike Locklear Group's references to arguments it allegedly made in the hearings on its motions to compel arbitration in the Booth case and the Williams case. Thus, as in the Hubbard, Averette, and Fuller cases, the only reference to arbitrability in the trial courts in the Booth and Williams cases was the *84 single statement in Locklear Group's motion to compel arbitration.
We agree with the plaintiffs that Locklear Group's solitary statement in its motion to compel arbitration that the arbitrator should decide the arbitrability of the claims against it was not sufficient to apprise the trial court that Locklear Group was relying on that argument. The first three numbered paragraphs in the motion set out facts relevant to the issue of arbitration, including quotations of substantial portions of the arbitration agreement. The next three paragraphs argued that the transaction at issue affected interstate commerce. The following four paragraphs-including paragraph 10, which contains the one sentence referencing arbitrability of the arbitration issue-argued that the language of the arbitration agreement was broad enough to include the subject matter of the underlying claims asserted by the plaintiffs. Paragraph 10 stated:
"Arbitration contracts cannot be singled out and be subjected to any different or more stringent rules of construction than other contracts. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). As plainly demonstrated by its language, the arbitration agreement in this case is sufficiently broad in scope to require arbitration of all disputes relating to:
" 'the resolution of any dispute arising out of, relating to, resulting from or concerning any contracts or agreements ... entered into by the parties, all alleged representation, promises and covenants, issues concerning compliance with any state or federal law or regulation ...[,] any matters taking place either before or after the parties entered into this agreement ...[,] the terms of this agreement and all clauses herein contained, their breadth and scope ...'
"(Exhibit A). The present case clearly arises out of and relates to the Plaintiff's purchase of the [vehicle] at issue, events taking place before and after the parties entered into the agreement, the dealership's compliance with state and/or federal law or regulations and alleged misrepresentations and/or omissions of Locklear in connection therewith. Additionally, the scope and breadth of this arbitration agreement is, by its terms, to be determined by the arbitrator."
The next paragraph argued that courts have a duty under the Federal Arbitration Act to "rigorously enforce agreements to arbitrate." The final few paragraphs stated the relief Locklear Group requested (i.e., that the trial court "should compel the Plaintiff to submit his dispute to binding arbitration, ... and all Court actions, including discovery, should be stayed pending arbitration") without any reference to having the arbitrator decide the issue of arbitrability.
When the motion to compel arbitration is read as a whole, it is clear that Locklear Group did not articulate why the question of the arbitrability of the claims against it should be submitted to the arbitrator. Its overriding argument was devoted to the merits of the issue whether the arbitration agreement is broad enough to encompass the plaintiffs' underlying claims against Locklear Group even though Locklear Group was not a signatory to the arbitration agreement, not to the proposition that the arbitrator, and not the court, should decide this issue. Except for the brief reference in paragraph 10, Locklear Group never mentioned arbitration of the arbitrability issue anywhere in its motion, including in its paragraphs specifying the relief it was requesting from the trial courts. Locklear Group's single, unsupported, *85 and unexplained sentence in this regard contrasts sharply with its relatively fulsome discussion in its motion as to the breadth of the language of the arbitration agreement and how this language was sufficient to entitle Locklear Group to arbitrate the plaintiffs' underlying claims (not to mention the contrast with the Locklear Group's thoroughly explained position on the subject of arbitrability in its brief on appeal to this Court). Indeed, by focusing essentially all of its attention on whether the language of the arbitration agreement was broad enough to cover the plaintiffs' claims against it, Locklear Group suggested that that was the dispositive issue and that it was for trial court to decide it.[8]
Locklear Group contends that the fact that it argued to the trial courts that the scope of the arbitration agreement was broad enough to cover claims asserted by the plaintiffs and that it also mentioned the arbitrability of that issue constituted the presentation of two arguments in the alternative. The plaintiffs note, however, that the arguments "were not framed as alternative arguments." Instead, the arbitrability statement is tacked as an afterthought to Locklear Group's central claim that emphasized the broad scope of the arbitration agreement.
Based on the foregoing, we conclude that, in the Hubbard, Averette, Fuller, Booth, and Williams cases, Locklear Group waived the issue whether the arbitration agreement by its terms assigns the issue of the arbitrability of the plaintiffs' claims against Locklear Group to the arbitrator for decision.
2. The Arbitrability of the Plaintiffs' Claims Against Locklear Group
Having concluded that it was for the courts to decide the arbitrability of the underlying claims made by Hubbard, Averette, Fuller, Booth, and Williams against Locklear Group, we now consider whether the trial courts correctly decided that issue. Whether they did so turns on the proper application of the so-called "equitable-estoppel exception" to the general rule that an arbitration agreement binds only the signatories to that agreement.
a. The Exception to Equitable Estoppel for "Party Specific" Language
Locklear Group argues that, despite the fact that it is not a signatory to the arbitration agreement, the plaintiffs "are equitably estopped from arguing that their claims against Locklear Group are not subject to arbitration."
"A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision. Ex parte Stamey, 776 So.2d 85, 88-89 (Ala. 2000). One of the key exceptions to this rule is the theory of equitable estoppel, under which a nonsignatory can enforce an arbitration provision when the claims against the nonsignatory are ' " 'intimately founded in and intertwined with' " ' the underlying contract obligations. Stamey, 776 So.2d at 89 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993), quoting in turn McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984) )."
*86 Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala. 2006).
This Court has, however, crafted an exception to this equitable-estoppel exception: "Where 'the language of the arbitration provisions limited arbitration to the signing parties,' this Court has not allowed the claims against the nonsignatories to be arbitrated." Id. at 380-81 (quoting Stamey, 776 So.2d at 89 ). In other words,
"[i]f an arbitration agreement is written in broad language so that it applies to '[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract,' Ex parte Napier, 723 So.2d 49, 51 (Ala. 1998) (emphasis added), or even in slightly narrower language so that it applies to 'ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO,' Stamey, 776 So.2d at 91 (capitalization in original; emphasis added), this Court will proceed to determine whether arbitration may be compelled under the doctrine of equitable estoppel.
"Conversely, if the language of the arbitration provision is party specific and the description of the parties does not include the nonsignatory, this Court's inquiry is at an end, and we will not permit arbitration of claims against the nonsignatory. See Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 131 (Ala. 2002) (affirming the trial court's order denying a nonsignatory's motion to compel arbitration where the arbitration agreement was between 'you [a signatory plaintiff] and us [a signatory defendant] or our employees, agents, successors or assigns') (bracketed language added); Ex parte Lovejoy, 790 So.2d 933, 938 (Ala. 2000) (issuing a writ of mandamus directing a trial court to enter an order denying a nonsignatory's motion to compel arbitration where the arbitration provision was limited to 'all disputes or controversies between you [Lovejoy] and us [Allen Motor Company and its assignees ]') (bracketed language and emphasis in original); First Family Fin. Servs. v. Rogers, 736 So.2d 553, 560 (Ala. 1999) (reversing a trial court's order granting a nonsignatory's motion to compel arbitration where 'you [the plaintiffs] and we [First Family]' agreed to arbitrate and the arbitration provision elsewhere stated that it applied to 'all claims and disputes between you [the plaintiffs] and us [First Family],' and furthermore stated that it applied to 'any claim or dispute ... between you [the plaintiff] and any of our [First Family's] employees or agents, any of our affiliate corporations, and any of their employees or agents') (bracketed language and emphasis in original); and Med Center Cars[, Inc. v. Smith], 727 So.2d [9] at 19 [ (Ala. 1998) ] (affirming a trial court's order denying nonsignatories' motions to compel arbitration where the arbitration provisions were limited to disputes and controversies 'BETWEEN BUYER AND SELLER') (capitalization in original)."
934 So.2d at 381.
The plaintiffs in this group of appeals contend that the arbitration agreement was limited to controversies between the signatories-Locklear CJD and each plaintiff-and thus that Locklear Group, as a nonsignatory, cannot enforce the arbitration agreement against the signatory plaintiffs. The plaintiffs highlight references in the arbitration agreement to "any party" or "the undersigned" or "the dealer." The trial courts' orders did the same. In this regard, the trial courts' orders set out the *87 following passage, which they attribute to the arbitration agreement:
" 'In connection with the undersigned's acquisition or attempted acquisition of the below described vehicle, by lease, rental, purchase or otherwise, the undersigned and the dealer whose name appears below, stipulate and agree, in connection with the resolution of any dispute arising out of, or relating to, resulting from or concerning any contracts or agreements, or agreements or contracts to be entered into by the parties .... shall be submitted to BINDING ARBITRATION.' "
(Capitalization in original; ellipses supplied by the trial courts.)
The plaintiffs argue that "[c]ontract language cannot get much more 'party specific' than [that found in the arbitration agreements]. There is no hint that the agreements are intended to cover claims against nonsignatories." The plaintiffs in particular emphasize a passage of the arbitration agreement that states that "the undersigned customer[s] and the dealer agree that the terms of this arbitration agreement shall control disputes between and among them." About this passage, the plaintiffs state: "Even aside from all the other party-specific language in the agreements, this language makes it clear that the agreements were intended to control disputes between and among the signatories, with no indication whatsoever that the agreements control any other dispute."
As Locklear Group observes, however, neither the plaintiffs nor the trial courts fully and accurately quote the operative language of the arbitration agreement.
First, as to the sentence of the arbitration agreement emphasized by the plaintiffs, that sentence actually states in full as follows: "In the event the dealer and the undersigned customer(s) have entered into more than one arbitration agreement concerning any of the matters identified herein, the undersigned customers and the dealer agree that the terms of this arbitration agreement shall control disputes between and among them." Obviously, the purpose of this statement is simply to address which of two arbitration agreements would control disputes between the parties if the parties have entered into more than one such agreement related to the subject transactions.
As to the above-quoted passage from the trial courts' orders, that passage conflates two separate sentences from the arbitration agreement. The first sentence, which in the arbitration agreement ends within the portion of the passage for which the trial courts substituted an ellipses, actually reads in its entirety as follows:
"In connection with the undersigned's acquisition or attempted acquisition of the below described vehicle, by lease, rental, purchase or otherwise, the undersigned and the dealer whose name appears below, stipulate and agree, in connection with the resolution of any dispute arising out of, or relating to, resulting from or concerning any contracts or agreements, or agreements or contracts to be entered into by the parties, all alleged representations, promises and covenants, issues concerning compliance with any state or federal law or regulation, and all relationships resulting therefrom, as follows: That the vehicle, services, and products (hereinafter 'products') involved in the acquisition or attempted acquisition are regulated by the laws of the United States of America; and/or, that the contract(s) and agreements entered into by the parties concerning said products evidence transactions and business enterprises substantially involving and affecting interstate commerce sufficiently to invoke *88 the application of the Federal Arbitration Act, 9 U.S.C. § 1, et seq."
This sentence merely states that "the undersigned and the dealer ... stipulate and agree" that the transactions and agreements "are regulated by the laws of the United States of America" and that "agreements entered into by the parties concerning said products evidence transactions and business enterprises substantially involving and affecting interstate commerce sufficiently to invoke the application of the Federal Arbitration Act, 9 U.S.C. § 1, et seq." In short, this sentence does nothing more than express the agreement of the parties that federal arbitration law is applicable to the arbitration agreement.
The second sentence, part of which the trial courts added to the above-quoted passage following the ellipses, is in fact the operative part of the agreement for present purposes. But that sentence actually begins as follows:
"The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties; the past, present and future condition of any products at issue; the conformity of the products to any contract description; the representations, promises, undertakings, warranties or covenants made by the dealer, its agents, servants, employees, successors and assigns, or otherwise dealing with the products; any lease, sale or rental terms or the terms of credit and/or financing in connection therewith; or compliance with any state or federal laws; any terms or provisions of any insurance sought to be purchased or purchased simultaneously herewith; any terms or provisions of any extended service contract to be purchased or purchased simultaneously herewith) shall be submitted to BINDING ARBITRATION ...."
(Emphasis added.)
Contrary to the suggestion by the trial courts, this sentence in the arbitration agreement clearly is not "party specific" in the sense described in Mark Dodge, but, as emphasized, actually professes to be applicable to "all disputes" arising from the transaction and related matters. There is no language in this passage that restricts the disputes covered by the arbitration agreement to claims between the parties.[9]
The operative arbitration language in the arbitration agreement is similar to the language in the arbitration agreement in Ex parte Napier, 723 So.2d 49, 51 (Ala. 1998), which provided that " '[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract ... shall be resolved by binding arbitration.' "
*89 The Napier Court concluded that this language was "broad enough to encompass Napier and Godfrey's claims against [nonsignatories] Foremost and Manning." Id. at 53.
The operative arbitration language in the arbitration agreement in these cases is also nearly identical to the language in the arbitration agreement at issue in VolkswagenGroup of America, Inc. v. Williams, 64 So.3d 1062, 1064 (Ala. Civ. App. 2010), which provided: " 'The undersigned agree that all disputes ... resulting from or arising out of or relating to or concerning the transaction entered into ... shall be submitted to BINDING ARBITRATION ....' " In Williams, the Court of Civil Appeals disagreed with the plaintiff's contention that
"the arbitration clause at issue is 'party specific.' The clause, rather, speaks to 'all disputes ... resulting from or arising out of or relating to or concerning the transaction,' a formulation that closely parallels the broad language recognized by the Alabama Supreme Court in Smith v. Mark Dodge, Inc., 934 So.2d 375 (Ala. 2006), as authorizing a nonsignatory to assert a right to compel arbitration through application of equitable estoppel ...."
Id. at 1065.
To reiterate, when "references [in arbitration provisions] to the parties specifically limited the claims that would be arbitrable under those provisions," the Court has concluded that the arbitration provisions " 'are not broad enough to encompass claims against the nonsignatories.' " Ex parte Stamey, 776 So.2d 85, 90 (Ala. 2000) (quoting Med Ctr. Cars, Inc. v. Smith, 727 So.2d 9, 19 (Ala. 1998) ). On the other hand, this Court also has held that, when an arbitration provision "contained no references to the parties that would impose a limitation on what claims would be arbitrated," the arbitration provision was broad enough to include claims that were related to the contract because the language was sufficient to indicate that "the party resisting arbitration ha[d] assented to the submission of claims against nonparties-claims that otherwise would fall within the scope of the arbitration provision-to arbitration." Stamey, 776 So.2d at 89. Like the arbitration provisions in Napier and Williams, the operative arbitration language in the arbitration agreement is not limited to claims between the parties. Accordingly, Locklear Group has cleared this hurdle to the invocation of the doctrine of equitable estoppel against Hubbard, Averette, Fuller, Booth, and Williams. We turn then to the central issue-whether the plaintiffs' claims against Locklear Group, a nonsignatory, are sufficiently intertwined with their claims against Locklear CJD, a signatory.
b. Sufficient Intertwining to Invoke Estoppel
As noted, a nonsignatory can enforce an arbitration provision when the claims against the nonsignatory are "intimately founded in and intertwined with" the underlying contract obligations. Stamey, 776 So.2d at 89. Smith v. Mark Dodge, Inc., 934 So.2d at 380. In Kenworth of Mobile,Inc. v. Dolphin Line, Inc., 988 So.2d 534 (Ala. 2008), this Court summarized the intertwining analysis provided in Service Corp. International v. Fulmer, 883 So.2d 621 (Ala. 2003) :
"In Service Corp. International v. Fulmer, 883 So.2d 621 (Ala. 2003), Blair Fulmer entered into a contract with SCI Alabama Funeral Services, Inc. ('SCI-Alabama'), for the provision of funeral and cremation services for his deceased mother. The contract included an arbitration provision. After Fulmer was given a vase that was supposed to have contained his mother's remains but allegedly *90 did not, Fulmer sued SCI-Alabama and Service Corporation International ('SCI'), SCI-Alabama's parent corporation. The defendants filed a motion to compel arbitration, which the trial court denied. The defendants appealed.
"SCI argued that, even though it was not a signatory to the contract containing the arbitration agreement, 'Fulmer's claims against the signatory defendant, SCI-Alabama, are so "intertwined" with his claims against SCI that arbitration of all of Fulmer's claims, including those against SCI, is appropriate.' 883 So.2d at 634. After noting Stamey's two-part test, this Court addressed the first part, which relates to whether the claims against the nonsignatory defendant are intertwined with the claims against the signatory defendant. Finding that prong satisfied, this Court wrote:
" 'Here, Fulmer's claims against SCI are clearly "intimately founded in and intertwined with" his claims against SCI-Alabama.... All of Fulmer's claims arise from the same set of facts. Virtually none of Fulmer's claims makes a distinction between the alleged bad acts of SCI (the parent corporation) and those of SCI-Alabama (its subsidiary); rather, the claims are asserted as if SCI and SCI-Alabama acted in concert.'
" 883 So.2d at 634."
988 So.2d at 543.
Just as in Fulmer, all of the plaintiffs' claims against Locklear Group in these cases are "intimately founded in" the same facts as are their claims against Locklear CJD. The plaintiffs' complaints make virtually no distinction between the bad acts of Locklear Group and those of Locklear CJD. Indeed, when the plaintiffs' complaints described purchasing their vehicles, they stated that they "dealt with Locklear [CJD] and/or Defendant Locklear [Group] employee[s]" and "[t]he Defendant Locklear [CJD] and/or Defendant Locklear [Group] ran a credit check on" each plaintiff. Every claim the plaintiffs asserted against Locklear CJD they also asserted against Locklear Group, and those claims were asserted as if Locklear CJD and Locklear Group had acted in concert, as if the latter was responsible for the acts of the former, and/or as if those persons who acted for one also acted for the other. Therefore, we conclude that the plaintiffs' claims against Locklear Group as a nonsignatory to the arbitration agreement are "intimately founded in and intertwined with" the underlying contract obligations and with the plaintiffs' contract-related claims against the signatory to the arbitration agreement, Locklear CJD, so that the doctrine of equitable estoppel is applicable.
Based on the foregoing, Locklear Group can enforce the arbitration agreement against Hubbard, Averette, Fuller, Booth, and Williams; the trial courts in this group of cases erred in denying Locklear Group's motions to compel arbitration.
B. Case no. 1160435: Jeffery Lollar and Betsy Lollar
As to the Lollars, Locklear CJD and Locklear Group argue that they met their prima facie burden so as to enforce the arbitration agreement, having filed a joint motion in support of which they submitted a contract calling for arbitration and uncontradicted evidence that the transaction affected interstate commerce. They also note that it is undisputed that the Lollars filed no response to their joint motion and supporting evidence. Accordingly, they contend that the trial court had no alternative but to grant their motion to compel arbitration and that it erred in not doing so.
*91 In support of their position, Locklear CJD and Locklear Group cite a passage from this Court's opinion Ex parte Greenstreet, Inc., 806 So.2d 1203 (Ala. 2001) :
"We hold that once a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce, the burden of persuasion shifts to the party opposing arbitration. If that party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration."
806 So.2d at 1209 (emphasis added).
The Lollars acknowledge that they failed to file a response to the motion to compel arbitration. They assert that failing to do so was an oversight that occurred because their counsel was expecting the trial court to set the motion to compel for a hearing just as it had done in two similar cases (one of which is before us in these appeals, case no. 1160375-Hood). Instead, in this case the trial court did not set a hearing; it simply entered an order denying arbitration before the Lollars filed a response. In an apparent attempt to rectify this oversight, the Lollars attach to their brief on appeal their own affidavits and a copy of what they contend was the actual arbitration agreement they signed.
Locklear CJD and Locklear Group have rejoined with a motion to strike the attachments to the Lollars' brief as well as all references in their brief to those documents. As they note, this Court cannot consider evidence that is not part of the record on appeal.
" ' "[A]ttachments to briefs are not considered part of the record and therefore cannot be considered on appeal." ' Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala. Crim. App. 2004) (quoting Huff v. State, 596 So.2d 16, 19 (Ala. Crim. App. 1991) ). Further, we cannot consider evidence that is not contained in the record on appeal because this Court's appellate review ' "is restricted to the evidence and arguments considered by the trial court." ' Ex parte Old Republic Sur. Co., 733 So.2d 881, 883 n.1 (Ala. 1999) (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992)...)."
Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala. 2007).
Locklear CJD and Locklear Group are correct. We do not consider the evidence submitted by the Lollars on appeal or their arguments based on that evidence because that evidence and those arguments were not presented to the trial court; accordingly, we grant the motion to strike that evidence.
Contrary to Locklear CJD and Locklear Group's argument, however, the Lollars' lack of response does not end our inquiry. It is true that, "once a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce," the burden shifts to the nonmoving party to show otherwise. Ex parte Greenstreet, Inc., 806 So.2d at 1209 (emphasis added). It is likewise true that this Court has said that, "[i]f th[e nonmoving] party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration." Ex parte Greenstreet, Inc., 806 So.2d at 1209 (emphasis added). Implicit in this standard is that we must evaluate whether the motion to compel arbitration does make a "prima facie showing" that the parties entered into an agreement to arbitrate the dispute in question and that this showing was "properly supported"
*92 by evidence of such an agreement. As we have otherwise recently expressed in another case in which the party opposing arbitration failed to present evidence in the trial court: "[U]nless on its face the arbitration provision is not valid or does not apply to the dispute in question, the trial court's decision to deny the motions to compel arbitration was erroneous." Family Sec. Credit Union v. Etheredge, 238 So.3d 35, 39 (Ala. 2017) (emphasis added).
The arbitration agreement states: "The undersigned agree that all disputes ... resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into ... shall be submitted to BINDING ARBITRATION ...." (Emphasis added.) There is no question that the arbitration agreement is broadly worded (a fact we have relied upon in the appeals in the Booth, Williams, Hubbard, Averette, and Fuller cases in concluding that the nonsignatory, Locklear Group, could enforce the agreement against those plaintiffs). And " 'where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of or relating to" the contract,' " as does this one, " 'that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement.' " Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 505 (Ala. 1999) (quoting Reynolds & Reynolds Co. v. King Autos., Inc., 689 So.2d 1, 2-3 (Ala. 1996) ). But as stated, this broader application still is one that is tied to "the contract" to which reference is made, i.e., claims " ' "arising out of or relating to" the contract,' " per the language at issue in Green Tree, for example. Or, in the case of the language at issue here, disputes "resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into." See also State v. Lorillard Tobacco, 1 So.3d 1, 9 (Ala. 2008) (quoting Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 275 (Ala. 1999) ) (noting that, "[f]or a dispute to relate to the subject matter of the arbitration provision, 'there must be some legal and logical nexus' between the dispute and the [subject matter of the] arbitration provision").
In this particular case, the parties agreed to arbitrate matters "relating to ... the transaction entered into," which was the Lollars' purchase of a 2009 Dodge Ram truck on May 28, 2013. According to the uncontradicted allegations of the complaint, the personal information of the Lollars' that was wrongly disseminated in connection with their identity-theft claims was provided to Locklear CJD in December 2015 during a visit to the dealership that was not related to the purchase of the 2009 Dodge Ram truck. On the face of the arbitration agreement, its terms do not apply to the interaction of the Lollars and the defendants that occurred in 2015. The 2013 vehicle purchase to which the 2013 arbitration agreement refers and relates is one transaction. The Lollars' 2015 visit to the dealership for the purpose of exploring whether to enter into an entirely different transaction with Locklear CJD (and their provision of financial information to Locklear CJD during that visit) is, quite simply, an unrelated matter.
The situation is similar to one presented in Capitol Chevrolet & Imports, Inc. v. Payne, 876 So.2d 1106 (Ala. 2003). In that case, Jean Payne purchased a used 1997 Cadillac Catera automobile from Capitol Chevrolet & Imports, Inc. ("Capitol"), on September 6, 2001. The arbitration agreement Payne signed in connection with the purchase had language similar to the arbitration agreement in this case:
" 'Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature *93 between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration ....' "
876 So.2d at 1107.
The Court described the facts involved in Payne's claims against Capitol as follows:
"In September 2002, Payne sued Capitol and a Capitol salesperson, Jason Golden, alleging fraud and conversion. According to Payne's complaint, approximately one month after she purchased the Catera, she returned the Catera to Capitol in reliance on Golden's representation that Capitol had a willing buyer for the vehicle. Payne relinquished possession of the Catera to Capitol and stopped making payments on the car. Payne alleged that Golden, while acting in the line and scope of his employment with Capitol, misrepresented to her that Capitol had a buyer for the Catera, and that, when Payne relinquished the Catera to Capitol in reliance on that misrepresentation, Golden converted the Catera for his personal use. Payne's complaint alleged that, as a result of the misrepresentation, she lost the use of her vehicle, suffered severe mental anguish, and suffered an adverse credit rating once she stopped making payments on the Catera."
876 So.2d at 1107-08.
The Court concluded that Payne's claims were not related to her purchase of the Catera and therefore were not subject to the arbitration agreement.
"We do not believe that the plain language of the arbitration agreement would lead one to assume or understand that the agreement covered the claims alleged in Payne's complaint-a later fraudulent misrepresentation, unrelated to the original sale of the vehicle, resulting in the conversion of the vehicle. The present dispute involves alleged subsequent tortious conduct on the part of Capitol and its agent that is not close enough in relation to the initial sale of the Catera to be covered by the language of the arbitration agreement."
876 So.2d at 1110 (emphasis added).
In this case, as in Payne, the plain language of the arbitration agreement, which relates to the 2013 transaction, does not lead one to understand that the 2015 identity-theft claims would be covered under the agreement. We noted in Kenworth of Dothan that, "[i]n order for a dispute to be characterized as arising out of or relating to the subject matter of the [transaction], and therefore subject to arbitration, the language of the arbitration provision must reasonably apply to the dispute." 745 So.2d at 275.
In response to the clear disconnect between the transaction to which the arbitration agreement relates and the separate matters at issue in this action, Locklear CJD and Locklear Group do not really explain how the arbitration agreement is broad enough to encompass the Lollars' identity-theft claims. Instead, they attempt to rely upon the arbitrability clause in the arbitration agreement (i.e., the clause providing that the arbitrator is to decide disputes over the arbitrability of the parties' underlying substantive dispute) in an effort to avoid this issue. But the difficulty *94 with this is the same one that existed in the Booth, Williams, Hubbard, Averette, and Fuller cases. That is, this issue was not presented to the trial court in such a manner as to preserve it for later appellate review. For the reasons already stated in our discussion of those other cases, we cannot reverse the trial court's order on that basis.
Because the arbitration agreement on its face does not apply to the Lollars' claims, we conclude that the trial court did not err in denying the joint motion to compel arbitration filed by Locklear CJD and Locklear Group.
C. Case no. 1160375: Anthony Hood
The final appeal before us involves the joint motion to compel arbitration filed by Locklear CJD and Locklear Group in response to the complaint filed by Anthony Hood.
Locklear CJD and Locklear Group contend that they presented a prima facie case in support of their motion to compel arbitration, i.e., that they introduced a contract calling for arbitration and produced evidence showing that the transaction affected interstate commerce. They argue that the trial court erred in determining the scope of the arbitration agreement because the arbitration agreement contained an arbitrability clause reflecting an agreement to allow the arbitrator to decide any arbitrability issues.
Hood's first response to these arguments is that the version of the arbitration agreement Locklear CJD and Locklear Group submitted to the trial court "is invalid and unenforceable because the agreement is fabricated and was not signed by [Hood] and the issue is for the Court to decide, not the arbitrator." " '[A] party who contests the existence of a contract containing an arbitration provision cannot be compelled to arbitrate that threshold issue because an arbitrator derives his authority solely from the parties' agreement. Only a court can resolve the question whether a contract exists.' " Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1053-54 (Ala. 2007) (quoting Edward D. Jones & Co. v. Ventura, 907 So.2d 1035, 1040 (Ala. 2005) ).
Hood's position is meritless. As detailed in the rendition of the facts, Hood alleged in his complaint and reiterated in his response to the joint motion to compel arbitration that he purchased a 2016 Dodge Ram 3500 truck from Locklear CJD in December 2015. He also admitted in his response that he signed a "Pre-Dispute Arbitration Agreement" with Locklear CJD. Hood alleged in his response and in his supporting affidavit that the only difference between the version of the arbitration agreement he signed and the one Locklear CJD and Locklear Group submitted with their joint motion to compel arbitration was that in the latter version "[t]he words 'Locklear Chrysler Jeep Dodge, LLC' " had been added near the bottom of the agreement in a different typeset than that of the rest of the agreement. Indeed, the version of the arbitration agreement Hood attached to his brief contains all the elements contained in the version attached to the defendants' joint motion to compel arbitration except the printed words "Locklear Chrysler Jeep Dodge, LLC" typed or printed above the "DEALER" signature line. Thus, Hood admits that he signed the arbitration agreement that contains the substantive language quoted in this opinion; he admits the agreement was signed by someone on behalf of the "DEALER," which he admits to be Locklear CJD; and he admits that the agreement contained an exact description of the vehicle he purchased.
Even if the allegation that Locklear CJD and/or Locklear Group added the *95 words "Locklear Chrysler Jeep Dodge, LLC" to the arbitration agreement after Hood signed the agreement is accepted as true, we are given no basis on which to conclude that this is a material alteration to the agreement for purposes of Hood's underlying claims. This Court has stated that in order to determine whether an alteration is material we should inquire: "Did the interposed matter make the 'instrument speak a language different in legal effect from that which it originally spoke, which carries with it some change in the rights, interests, or obligations of the parties?' " Benton v. Clemmons, 157 Ala. 658, 660, 47 So. 582, 583 (1908). See also 3B C.J.S. Alteration of Instruments § 4 (2017) ("In general, for the alteration of an instrument to be 'material,' the alteration must be such as to change the legal effect of the instrument."). In this instance, the alleged addition of the words "Locklear Chrysler Jeep Dodge, LLC" changed none of the obligations of the parties to the arbitration agreement. Hood knew and admitted that he was signing an arbitration agreement with Locklear CJD in connection with his purchase of a vehicle. A representative of the dealership signed the agreement. The terms of that agreement were not changed in any degree by the alleged addition of the words "Locklear Chrysler Jeep Dodge, LLC." Accordingly, the arbitration agreement was not "fabricated," and Hood's argument does not defeat the arbitration of Hood's underlying claims.[10]
Like the Lollars, Hood also contends that his identity-theft allegations are not within the scope of the arbitration agreement because they do not "result[ ] from, aris[e] out of, relat[e] to or concern[ ] the transaction entered into," i.e., the purchase of a vehicle from Locklear CJD, which is the object of the arbitration agreement. In response, as in the Lollars' case (and the Hubbard, Averette, Fuller, Booth, and Williams cases), Locklear CJD and Locklear Group counter that there is a clause in the arbitration agreement that provides for the arbitrator to determine the scope of the arbitration agreement.
Unlike all the other appeals before us, however, in this case not only was there a hearing on the motion to compel arbitration, but also that hearing was transcribed and the transcript submitted as part of the record on appeal. According to that transcript, Hood's counsel argued as follows to the trial court: "[O]ur argument is that somebody at the dealership was being allowed to [take customers' personal information] and then sell [their] identities out on the black market[, which] doesn't have anything to do with buying a car." In response, counsel for Locklear CJD and Locklear Group stated:
"And our response to that specific argument is, first, we believe that the arbitration agreement is broad enough in scope to cover these. But, more importantly, we don't even get to that issue here before you, your Honor. The arbitration agreement clearly provides that the issue of scope and breadth arbitrability is for the arbitrator to decide, not this trial court. So whether or not the claims being asserted fall within the scope of the arbitration agreement is for the arbitrator to decide based on the plain and unambiguous language in the arbitration agreement. Plus, it applies for AAA rules, and there [are] Alabama Supreme Court cases that clearly state *96 that, that in and of itself also shows an intent based on those rules to allow the arbitrator to decide the issue of scope and breadth. So that is something that the arbitrator is to determine and not this court."
Thus, in Hood's case, Locklear CJD and Locklear Group clearly and explicitly argued to the trial court that there was an arbitrability clause in the arbitration agreement and that the import of the clause was that the issue whether Hood's identity-theft claims were covered by the arbitration agreement was for the arbitrator to decide, not the trial court. Therefore, the effect of the arbitrability clause is properly before us in this appeal.
Hood's first response to Locklear CJD and Locklear Group's invocation of the arbitrability clause is to contend that "clear and unmistakable evidence that [Hood] and [the] Locklear Defendants agreed to arbitrate the issue of arbitrability does not exist because a valid arbitration agreement does not exist." This argument relies upon Hood's assertion, which we just rejected, that the arbitration agreement was fabricated. Because we have concluded that a valid arbitration agreement was submitted by Locklear CJD and Locklear Group, the arbitrability clause cannot be ignored on that basis.
Hood next contends that the "Locklear Defendants arguably waived a ' First Options clause' argument because this argument was not presented in their initial Motion to Compel Arbitration with the trial court or in oral argument on the same."[11] As we have already recounted, however, Locklear CJD and Locklear Group clearly and explicitly presented its arbitrability-clause argument to the trial court in the hearing on their joint motion to compel arbitration.
Hood also argues that the arbitrability clause in the arbitration agreement is "wholly diverse from the " ' First Options clause' in [ Smith v.] Mark Dodge[, Inc., 934 So.2d 375 (Ala. 2006) ]." Hood notes that the arbitrability clause in Smith stated: " '[Smith] and [Mark Dodge] further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator.' " 934 So.2d at 378. Hood argues that "[t]he explicit language in Mark Dodge stating 'whether a particular controversy is subject to arbitration shall be decided by the Arbitrator' is clearly missing from [the] Locklear Defendants' fabricated arbitration agreement."
In their principal brief, Locklear CJD and Locklear Group do not contend that the arbitrability clause in the arbitration agreement is similar in wording to the arbitrability clause in Smith. Instead, they argue correctly that the arbitrability-clause language in the arbitration agreement is identical to language in arbitration agreements analyzed by this Court in Jim Burke Automotive, Inc. v. McGrue, 826 So.2d 122 (Ala. 2002), and Ex parte Waites, 736 So.2d 550 (Ala. 1999).[12] As Locklear CJD and Locklear Group observe, this Court in McGrue and Waites held that the arbitrability clauses in those arbitration agreements constituted clear and unmistakable evidence that the parties intended to arbitrate issues of arbitrability.
In his brief to this Court, Hood addresses McGrue and Waites, but only by contending *97 that they are distinguishable from the present case on the ground that "neither [McGrue nor Waites] disputed the validity of the underlying arbitration agreements." As we already have concluded, however, Hood's contention that the arbitration agreement was "fabricated" must be rejected. The fact remains, then, that in McGrue and Waites this Court concluded that language identical to that contained in the arbitration agreement was sufficient to warrant submission of issues of arbitrability to the arbitrator. Hood offers no other reason why McGrue and Waites would not be dispositive of the present case.
IV. Conclusion
Based on the foregoing analysis, we affirm the order of the trial court in the Lollars' appeal, which denied the joint motion to compel arbitration filed by Locklear CJD and Locklear Group. We reverse the trial courts' orders in Hubbard's, Averette's, Fuller's, Booth's, and Williams's appeals, which denied the motions to compel arbitration as to Locklear Group, and in Hood's appeal, which denied the joint motion to compel arbitration filed by Locklear CJD and Locklear Group; those causes are remanded for the trial courts to enter orders granting those motions.
1160335-REVERSED AND REMANDED.
1160336-REVERSED AND REMANDED.
1160337-REVERSED AND REMANDED.
1160435-MOTION TO STRIKE GRANTED; AFFIRMED.
1160436-MOTION TO STRIKE GRANTED; REVERSED AND REMANDED.
1160437-MOTION TO STRIKE GRANTED; REVERSED AND REMANDED.
1160375-REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Main, and Bryan, JJ., concur.
Stuart, C.J., and Bolin, Main, and Bryan, JJ., concur.
Murdock, J., concurs specially.
MURDOCK, Justice (concurring specially in case no. 1160375).
As the main opinion explains, Anthony Hood responds to the invocation by Locklear Chrysler Jeep Dodge, LLC, and Locklear Automotive Group, Inc., of this Court's decisions in Jim Burke Automotive, Inc. v. McGrue, 826 So.2d 122 (Ala. 2002), and Ex parte Waites, 736 So.2d 550 (Ala. 1999), but he does so by arguing only that those cases involved no issue as to the validity of the underlying arbitration agreements, whereas, according to Hood, the underlying arbitration agreement in this case is invalid (the rejection of the latter proposition by the main opinion being a position with which I agree). Hood does not, for example, attempt to argue that the language of the arbitrability provision at issue here is materially different from that held to be sufficient in McGrue and Waites. Neither does Hood argue that we should overrule McGrue and Waites. And, although I confess concerns as to the sufficiency of the language here to meet the "clear and unmistakable" test articulated in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), other than pointing out that the language used here is "diverse" from the more explicit language employed in First Options, Hood does not offer a sufficient explication of the asserted insufficiency so as to compel a reexamination of McGrue and Waites. And because the question at hand does not concern the *98 subject-matter jurisdiction of the trial court or this Court, I cannot conclude that this Court should sua sponte explore the matter.
In addition, neither party has even mentioned this Court's 2012 decision in Auto Owners Insurance, Inc. v. Blackmon Insurance Agency, Inc., 99 So.3d 1193 (Ala. 2012). In particular, Hood does not argue that, even if the arbitrability language at issue satisfies the "clear and unmistakable" standard articulated in First Options, the particular underlying substantive claims in this case should not be sent to the arbitrator for consideration of their arbitrability because they do not even "arguably" fall within the ambit of the arbitration agreement. See Blackmon, 99 So.3d at 1198. That is, no issue is raised as to whether Hood's identity-theft claims fall within the universe of disputes to which the so-called arbitrability clause is to apply. I feel no compunction therefore to cast a vote in this case reflective of the position I took in my dissent in Blackmon, a position to which I continue to adhere. See Blackmon, 99 So.3d at 1199 (Murdock, J., dissenting).

The other defendants were Verizon Communications, Inc., CellCo Partnership d/b/a Verizon Wireless, Verizon Credit, Inc., Wireless Advantage Communications, Inc., and fictitiously named defendants A through H.

There is an immaterial discrepancy between Hood's complaint and the arbitration agreement on the year of the purchased vehicle, i.e., whether it was a 2015 or 2016 model.

The other defendants were Verizon Communications, Inc., CellCo Partnership d/b/a Verizon Wireless, Verizon Credit, Inc., Wireless Advantage Communications, Inc., and fictitiously named defendants A through H.

On February 8, 2017, this Court by order consolidated this appeal with case no. 1160336 and case no. 1160337 for purposes of filing the record and briefing.

Hubbard, Averette, Fuller, Booth, and Williams are all represented by the same attorneys, and the argument sections of their appellee briefs are substantively very similar.

Locklear Group does not argue that it presented the arbitrability argument in the hearings in the Hubbard, Averette, and Fuller cases.

Rule 10(d), Ala. R. App. P., states, in part: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."

A fair question exists, albeit one we need not address further, as to whether the trial courts' error could be said to have been invited under the circumstances. A party " ' "may not predicate an argument for reversal on 'invited error,' that is, 'error into which he has led or lulled the trial court.' " ' " White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d at 1057 (quoting Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala. 2003), quoting other cases).

We note that Hubbard, Averette, Fuller, Booth, and Williams-unlike the Lollars and Hood-do not contend that the substantive nature of their identity-theft claims, rather than the nature of the parties against whom those claims are made, is such that the language of the arbitration agreement is not broad enough to encompass those claims. Such a contention would be difficult for Hubbard, Averette, Fuller, Booth, and Williams to maintain, given that they did not oppose Locklear CJD's motion for arbitration of the plaintiffs' similar identity-theft claims against it, which motion was based on the same substantive arbitration-agreement language.

In an effort to provide an alternative ground for affirmance of the trial court's order as to Locklear Group, Hood also makes a "nonsignatory" argument similar to that made by first group of plaintiffs discussed above. This argument by Hood fails for the same reasons as did the similar argument by those other plaintiffs. See discussion, supra.

Hood's reference to a "First Options clause" is a reference to the discussion of arbitrability clauses in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

See discussion, supra.